## UNITED STATES v. CERTAIN-TEED PRODUCTS CORPORATION et al.

### No. 66007.

District Court of the United States for the District of Columbia.

Feb. 26, 1941.

Grant W. Kelleher, Sp. Asst. to the Atty. Gen. (Thurman Arnold, Asst. Atty. Gen., George B. Haddock, Edward J. Hickey, Jr. and Arthur S. Clark, Jr., Sp. Attys., on the brief), for the United States.

O. Max Gardner and Harold F. McGuire (of Gardner, Morrison, Rogers & McGuire), both of Washington, D. C., Edward R. Johnston (of Poppenhusen, Johnston, Thompson & Raymond), of Chicago, Ill., Leonard B. Ettelson, Stephen J. Allie, and Erwin M. Treusch (of Samuel A. & Leonard B. Ettelson), all of Chicago, Ill., Bruce Bromley and Eugene E. Ford (of Cravath, de Gersdorff, Swaine & Wood), both of New York City, and Richard H. Wilmer and Douglas L. Hatch (of Cravath, de Gersdorff, Swaine & Wood), both of Washington, D. C., for defendants.

MORRIS, Justice.

On June 28, 1940, an indictment was returned in this Court by the grand jury, charging the defendants (two corporations) with violation of Sections 1 and 3 of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U. S.C.A. §§ 1–3.[1] The defendants were arraigned on September 20, 1940, and pleaded not guilty. Thereafter leave was granted by the Court to the defendants to withdraw the pleas of not guilty, and to file demurrers or other preliminary motions within thirty days after arraignment. No demurrer was filed by either of the defendants within such period. However, the defendants have joined in a motion for a bill of particulars. The case is now before the Court on such motion, which was argued with a motion for a bill of particulars in the case of United States v. United States Gypsum Company et al., D.C., 37 F.Supp. 398, because of the close relation in which the two cases stand. Briefs were submitted and have been considered.

In substance the indictment charges that the two defendants and an alleged co-conspirator corporation, not named as a defendant, beginning in the year 1935 and continuing into the year 1939, "combined and conspired to establish, fix and maintain high uniform and non-competitive prices" for perforated gypsum lath sold by them in commerce between the States and the District of Columbia,. and pursuant to such combination and conspiracy "throughout the period from the month of July, 1936, to the month of May, 1938," sold such product in commerce between the States and the District of Columbia to dealers and consumers within the District of Columbia at the high uniform and non-competitive prices so established, fixed and maintained. The indictment describes the method by which the alleged combination and conspiracy was entered into and effectuated. It is charged that, during the months of June and July, 1936, the United States Gypsum Company

---

[1] Section 1 of the Sherman Act declares illegal contracts, combinations and conspiracies in restraint of trade or commerce among the several States. Section 3 declares illegal contracts, combinations, and conspiracies in restraint of trade or commerce in the District of Columbia or between the States and the District of Columbia.

entered into substantially identical license agreements with the Certain-Teed Products Corporation and the American Gypsum Company relating to letters patent No. 1,-938,354, which had been issued to the United States Gypsum Company on December 5, 1933, upon application of Carlisle K. Roos, director of research and development for United States Gypsum Company, and which patent purported to cover gypsum lath with perforations of a certain dimension and number and with a designated spacing and relationship. It is. charged that, by these licensing agreements, the United States Gypsum Company purported to license the two other corporations to manufacture and sell perforated gypsum lath under the patent above referred to; that the two corporations agreed not to contest the validity of this patent during the life of the agreements, and the United States Gypsum Company reserved the right to determine and fix the minimum prices of perforated gypsum lath manufactured and sold by the licensee corporations, which corporations agreed to abide by these minimum prices. It is further charged that the patent upon which the agreements above mentioned were based was void and did not embrace any patentable invention within the meaning of the patent laws; and that the defendants and co-conspirator were informed and believed said patent to be void and not to embrace any patentable invention at the time of the execution of the license agreements and throughout the time of their operation. It is further charged that the defendants and co-conspirator entered into the licensing agreements "principally for the purpose of enabling the United States Gypsum Company to determine and fix the prices of perforated lath manufactured and sold" by the defendant and co-conspirator, and that the license agreements were not bona fide patent license agreements, and the exercise of price control by the United States Gypsum Company under the agreements was "not normally and reasonably adapted to protect the pecuniary reward of a patentee under a lawful patent monopoly." It is charged in other counts of the indictment that a combination and conspiracy was entered into between the defendants and the co-conspirator for the purpose of fixing the price of perforated lath, and that it was carried out by means of patent licensing agreements which were executed as the result of an agreement among the defendants to fix the price of perforated lath at a specific differential above the price of straight lath, it being claimed that, in these circumstances, such price fixing agreements constitute violations of the Sherman Anti-Trust Law, notwithstanding the use of patent licenses to effectuate the purpose of the agreements. Other subordinate allegations of the indictment are stated in the. margin. [2]

As in the case of United States v. United States Gypsum Company et al., the defendants in this case, by their motion for a bill of particulars, seek definite and specific detail respecting substantially every act mentioned in the indictment. A summary of the motion is stated in the margin. [3]

---

[2] It is charged that the United States Gypsum Company determined and fixed the minimum prices of perforated lath manufactured and sold by the licensee corporations throughout the period from July, 1936, to May, 1938, and circulated numerous price lists, and that said licensee corporations throughout that period sold such product on the basis of such minimum prices; that the validity of the patent referred to has not been passed upon by any court of the United States, and the United States Gypsum Company has refrained from instituting infringement proceedings, although various non-licensee manufacturers have been accused by that company of infringing its patent; and that the patent referred to was issued by the Patent Office upon the basis of false and fraudulent representations made by Carlisle K. Roos, Director of Research and Development for the United States Gypsum Company. Other

acts alleged in the indictment are sufficiently set forth in note 3.

[3] Section 1 is the only section of the motion which is directed to all of the counts. It requests that the Government state how and when each of the corporations is claimed to have become a party to each of the combinations and conspiracies referred to in paragraphs 7, 8, 27, 28, 48, 49, 68, 69, 78, 79, 89 and 90 of the indictment.

Sections 2 to 10, inclusive, are directed only to allegations in Counts I, II, and II, and these sections, together with the allegations of Count I of the indictment to which they relate, are as follows:

Paragraph 11 alleges that, at the time of the execution, and throughout the period of the operation, of the license agreements, the corporations were informed, sometimes by patent counsel, that the perforated lath patent was void and did not embrace any patentable invention.

The principles which it is considered should guide the requirement for additional information respecting the allegations of an indictment of this character are discussed in the memorandum opinion in the case of United States v. United States Gypsum Company et al.

An order will, therefore, be entered requiring the United States within sixty days to serve upon the attorney for the moving defendants a bill of particulars, setting forth the information respecting the allegations of the indictment indicated below. It will be further ordered that such bill of

Section 2 of defendants' motion requests the Government to specify when and where the corporations were informed that the patent involved was void and did not embrace any patentable invention; to name the persons representing the corporations, and the persons informing them on each occasion; to state whether the information was oral or in writing; to state the substance of oral communications; and to furnish copies of, or identify, all writings by which the corporations were so informed.

Paragraph 11 also alleges that, at the time of the execution, and throughout the period of the operation, of the license agreements, the corporations believed that the patent was void and did not embrace any patentable invention. Section 3 of defendants' motion requests the Government to specify the names of all persons representing the corporations who believed the patent was void and did not embrace any patentable invention.

Paragraph 11 also alleges that the corporations entered into the license agreements knowing that the patent was void and that it would not support lawful price control by United States Gypsum Company. Section 4 of the defendants' motion requests the Government to specify "as to each of the corporations" the names of the persons who knew that the patent was void and would not support lawful price control.

Paragraph 14 alleges that the use of perforations and of indentations in gypsum lath and in other products used to support plaster was known to numerous manufacturers and distributors of gypsum products and numerous building contractors and owners, particularly those manufacturers and distributors selling gypsum lath and those contractors and owners engaged in building construction in California, and to officials and employees of National Bureau of Standards, and to numerous persons engaged in the promulgation and administration of building codes in California and other states, and to numerous architects, fire underwriters, insurance companies, building material testing laboratories, associations of building material manufacturers and distributors, authors of scientific publications, and officers, agents, and employees of, and contributors to, building trade journals and papers for many years prior

to the alleged invention claimed by the patent. Section 5 of defendants' motion requests the Government to identify each of these persons.

Paragraph 15 alleges that gypsum lath with perforations and with indentations was manufactured and sold by several manufacturers of gypsum lath, particularly those selling in California, and was used by numerous building contractors and owners, particularly those engaged in building construction in the State of California, for many years prior to the alleged invention claimed by the patent. Section 6 of defendants' motion requests the Government to identify each of these manufacturers and distributors.

Paragraph 17 alleges that descriptions and exhibitions of perforated gypsum lath appeared in numerous printed publications prior to the alleged invention claimed in the patent and identifies four of these publications by their names and dates of issuance. Section 7 of the defendants' motion requests the Government to identify each of the printed publications referred to.

Paragraph 18 alleges that "said prior art, including the prior knowledge, use, and printed publications described in paragraphs 14 to 17 hereof, fully anticipated and disclosed the alleged invention" claimed by the patent. Section 8 of defendants' motion requests the Government to specify all prior art, if any, which anticipated and disclosed the alleged invention in addition to the prior art referred to in paragraphs 14 to 17 of the indictment.

Paragraph 20 alleges that, during the month of November, 1931, representatives of various manufacturers of gypsum lath met in Washington, D. C., and discussed the fire resistance of wall structures constructed with straight gypsum lath, and the failure of said structures to meet the standards of fire resistance of National Bureau of Standards. Section 9 of the defendants' motion requests the Government to state the time and place of the meeting referred to, and the names of the persons present and the substance of what transpired at the meeting referred to.

Paragraph 23 alleges that the particular perforations described in the application for the patent "were merely one of several kinds of perforations which, in

particulars may be supplemented if the Government should subsequently learn of further particulars with respect to the allegations of the indictment as to which it is required to furnish information indicated below, such supplementary bill of particulars to be served within ten days after learning of such further particulars, provided service be at least ten days prior to the trial. In all respects, except as otherwise indicated, the motion for a bill of particulars will be denied.

■ I-1 and II-1. The information contained in the indictment is deemed sufficient to inform the defendants as to the method by which it is charged each defendant became a party to the alleged conspiracy; and the time, fixed as it is by the indictment within reasonable limits, is deemed sufficient, by proper investigation on the part of the defendants, to enable them to properly prepare their defense.

■ I-2. The particular allegation of the indictment here questioned is one which undertakes to bring home to the defendants actual knowledge or advice that the patent involved was void. It is believed that the Government should, therefore, furnish such information in its knowledge with respect to time, within reasonable limits, parties, or by other means of identification, as will enable the defendants, by proper investigation, to prepare their defense.

I-3. It is deemed that, if the information herein required in response to the foregoing paragraph is furnished, that which is sought by this section is not necessary to enable the defendants to properly prepare their defense.

■ I-4 (1), (2), (3) and (5). Inasmuch as the charge here involved is not only the invalidity of the patent, but the application for and use of the patent as a subterfuge, it is considered that more par-

---

the light of well-known mechanical principles, would permit a practical and efficient use of perforations in gypsum lath to increase the fire resistance of the wall or ceiling structure." Section 10 of the defendants' motion requests the Government to specify and describe these several kinds of perforations other than the kind described in the patent application.

Sections 11 to 14, inclusive, of defendants' motion are applicable only to Counts IV, V and VI. These demands and the allegations of Count IV to which they are directed are as follows:

Paragraph 70 alleges that the corporations held numerous private meetings in Chicago, Illinois, to discuss the production and sale of perforated gypsum lath. Section 11 of the defendants' motion requests the Government to state the time and place of each of such meetings; to specify the manufacturers represented at each of such meetings; to set forth the names of the persons representing the corporations and each of the other manufacturers represented at each of such meetings; and to state the substance of what transpired at each of such meetings.

Paragraph 70 also alleges that, at said meetings, United States Gypsum Company offered to enter into license agreements licensing each of the manufacturers attending said meetings to manufacture and sell perforated gypsum lath under its patent. Section 12 of the defendants' motion requests the Government to name the persons representing United States Gypsum Company as to each such offer; as to each offer, to state whether oral or in writing; if oral, to state the substance thereof; and if in writing to furnish a copy of the writing or identify it.

Paragraph 71 alleges that, as a result of the discussions among the manufacturers, United States Gypsum Company agreed with the manufacturers to determine and fix the price of perforated gypsum lath at a specific differential above the price of straight gypsum lath. Section 13 of the defendant's motion requests the Government to specify all times when and places where United States Gypsum Company entered into said agreements; to name the parties to each such agreement and the persons representing each of such parties; to state whether each such agreement was oral or in writing; if oral, state the substance thereof, and, if in writing, to furnish copies thereof or to identify the written agreement.

Paragraph 71 of the indictment alleges that the corporations understood and believed that, if the license agreements were executed, United States Gypsum Company would determine and fix the price of perforated gypsum lath at the differential agreed upon. Section 14 of the defendants' motion requests the Government to name the persons representing the corporations who understood and believed that, if the license agreements were executed, United States Gypsum Company would determine and fix the price of perforated gypsum lath at this differential; and to state the period of time during which each of said persons so understood and believed.

ticular identification of such prior art should be stated to enable the defendants to properly prepare their defense. The Government shall furnish such information within its knowledge respecting parties, or by such other means of identification as will, by proper investigation on the part of the defendants, accomplish this purpose.

(4). It is considered that the information furnished in the indictment is sufficient.

I-5. It is considered that the information furnished in the indictment is sufficient with reasonable investigation on the part of the defendants to enable them to properly prepare their defense.

II-2, 3, 4 and 5. It is not believed that information in addition to that contained in the indictment is necessary to enable the defendants by reasonable investigation to prepare their defense with respect to the allegations here questioned.

