## UNITED STATES v. OFFUTT et al.
### No. 8071.

United States Court of Appeals for the District of Columbia.

Decided April 13, 1942.

---

[3] Pacific Employers' Ins. Co. v. Pillsbury, 61 F.2d 101.

John L. Laskey, Asst. U. S. Atty., of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, was on the brief, for appellant.

Lawrence Koenigsberger, of Washington, D. C., with whom Messrs. Henry I. Quinn and Charles E. Ford, both of Washington, D. C., were on the brief, for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

The Government has indicted Offutt, a lawyer, and Sopourn, a registrant under the Selective Training and Service Act of 1940, for conspiracy. The offenses against the United States which are said to be the object of the conspiracy were violations by Sopourn of the Selective Service Act.[1] There is a demurrer to the indictment which was sustained, without opinion, by the trial court. The United States appeals.

---

[1] 54 Stat. 885, 50 U.S.C.A.Appendix, § 301 et seq.

The indictment stated:

"On October 16, 1940, Sopourn came under the Selective Service Act of 1940, and he registered as required. Prior to April 19, 1941, Sopourn had filed his questionnaire; he had been classified 1–A; his call for induction had been reached; he had been duly designated to fill a call; and he had been notified to report at the Armory on April 19, 1941, for induction. Thus Sopourn was a 'selected man' charged with the duty of reporting for induction.

"On April 14, 1941, Sopourn and Offutt, and others unknown, aware of all of this, conspired to commit offenses against the United States by violating Section 11 of the Selective Training and Service Act of 1940, to wit, (a) to cause Sopourn to neglect wilfully reporting for induction (b) to cause Sopourn wilfully to evade service, and (c) to cause Sopourn to evade wilfully a requirement of the Act; in pursuance of the conspiracy the following overt acts were done:

"On April 14th, and again on April 18th, Sopourn talked with Arnold, Chairman of Local Board No. 8. On April 18th, Offutt talked over the telephone with Arnold; prepared and delivered to Arnold two affidavits and a letter directed to the Local Board; had two conversations with Block [appeal agent]; Offutt and Sopourn talked together and Offutt advised Sopourn not to report on the next day. On April 19th, Offutt talked over the telephone with Block. On the same day Sopourn wilfully neglected to report."

■ The federal conspiracy statute[2] makes it a crime for two or more persons to agree, inter alia, to commit any offense against the United States, and one or more of them to do any act to effect the object of the conspiracy. Thus there are three essentials in a conspiracy indictment: the agreement, the offense-object toward which the agreement is directed, and an overt act. The agreement is the conspiring when it is to commit an offense against the United States. The offense-object need not be committed, for the crime is the agreement to do it.[3] In that sense the crime of conspiracy is analogous to the offenses of "attempt." But if the offense-object is committed, the crime of conspiracy does not vanish or merge.[4] The statutory crime differs from common-law conspiracy in that it requires an overt act.[5] That is made an essential to give the conspirators a time, a place, and a chance to say that although we did agree, now that we are about to start, let's call it off.[6] It also makes the indictment for, and the proof of, the illegal meeting of the minds more objective.

In this case the Government argues that the indictment is sufficient, and discusses very briefly some of the cases and principles on this issue. The appellees make five points: (1) The indictment, by stating that the designation to fill a call and the order to report for induction were prior to April 19th, does not state that they were in effect on the 14th when the alleged conspiracy is said to have begun, nor from the 14th to the 19th when the overt acts supposedly took place. (2) A conspiracy between two persons to cause one of them to neglect a duty is a legal impossibility because of the necessity of an overt act. (3) The allegation that the agreement was to cause one of them to evade service (b) is vague and uncertain. (4) The allegation that the agreement was to cause one of them to evade a requirement of the Selective Service Act (c) is more vague and uncertain. (5) The indictment is insufficient because the overt acts set forth could not have had or do not appear to have had any connection with the object of the illegal agreement.

Points (1), (2), and (5) go to the sufficiency of the indictment as a whole. Points (3) and (4) go to the sufficiency of two of the stated offense-objects. We will discuss the five points in order.

■ We regard point (1) as hypertechnical. The indictment states that Sopourn had been duly registered, classified, designated, and notified to fill a call on the 19th, and that knowing all of this, the conspiracy was entered into on the 14th, the object of

2 18 U.S.C.A. § 88.

3 Goldman v. United States, 245 U.S. 474, 38 S.Ct. 166, 62 L.Ed. 410; United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211.

4 United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211; Lisansky v. United States, 4 Cir., 31 F.2d 846, 67 A.L.R. 67; United States v. Halbrook, D.C.E.D.Mo., 36 F.Supp. 345;

11 Am.Jur., Conspiracy, § 9. But see Weiss v. United States, 3 Cir., 103 F.2d 759.

5 United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211; Marino v. United States, 9 Cir., 91 F.2d 691, 113 A.L.R. 975.

6 United States v. Manton, 2 Cir., 107 F.2d 834, 838, 839.

which was to fail to report on the 19th, and that acts carrying out the object were done on the 14th to 19th, inclusive. Nearly everyone not a lawyer, and most lawyers, would believe that the recitation meant that the order to report for induction was in effect from the 14th to the 19th. While defendants are to be protected, indictments need not have the multiplicity of saying everything backwards, forwards, and sideways.

■ We hold point (2) unsound. The argument is a clever combination of the fact that an overt act is required, of the fact that only two conspirators are named, and of the fact that the object of the conspiracy was an offense of omission. Suppose we take the present statute. A is one required to register. A and B agree that A will not register. B locks A in X's time vault which is not expected to open until after the registration period. It would appear that A and B agreed or conspired to commit an offense against the United States, the offense being the failure of A to register. The act of locking A in X's time vault is certainly an overt act, and it certainly was intended to effectuate the conspirators' purpose of having A not register. The essentials of the statutory crime of conspiracy are all present.

■ We agree with appellees' argument under points (3) and (4), but that does not make the indictment bad A reading of the whole indictment with particular attention on the charging part shows a conspiracy to commit the offense of violating the Selective Service Act by failing to report for induction. A recognized statutory offense is charged, the violation of Section 11 of the Selective Service Act, and the to-wit (a), the failure to report for induction, with which the appellees have no quarrel, sufficiently details the type of violation. The to-wits (b), to evade service, and (c), to evade a requirement of the Selective Service Act, use generic phrases. These broad phrases embrace the failure to report for in-

duction. If these generic terms were meant to include some offense-object in addition to the failure to report for induction, they would be insufficient. The offense-object of a conspiracy need not be charged with the same completeness as where an indictment for that crime is drawn, but the indictment, with some precision, must acquaint defendant with the nature of the offense-object.[7] Standing alone, the phrases, to evade service, and to evade a requirement of the Act, would not do this. They are too much like stating that the offense-object is to violate some of the laws of the United States. This indictment, then, charges one specific offense-object, namely, the violation of Section 11 of the Selective Training and Service Act by failing to report for induction.

■■ In respect of point (5), we cannot say, as these appellees do, that the overt acts could not have furthered the conspiracy of wilfully agreeing that Sopourn was not to report. It appears from the majority of the overt acts charged that the appellees may very well have been merely attempting to employ the Selective Service System's machinery for deferment. Nonetheless the indictment states that the agreement was made on the 14th; if that is true the alleged overt acts came after the conspiracy was formed and could possibly have furthered its purpose as the indictment claims. When passing upon the sufficiency of an indictment, it is usually considered that an allegation that the act was done for the purpose of carrying out the conspiracy is enough.[8] At any rate the last overt act stated, the failure of Sopourn to report, is clearly sufficient. That act is the commission of the offense itself for which the illegal agreement was supposedly formed. The commission of the offense-object satisfies the reasons for the overt act requirement, and there can be no doubt of its tendency to effectuate the conspiracy. It has been consistently held that the commission of the offense-object can be an overt act.[9]

[7] Wong Tai v. United States, 273 U. S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Thornton v. United States, 271 U.S. 414, 423, 46 S.Ct. 585, 70 L.Ed. 1013; Harper v. United States, 8 Cir., 27 F.2d 77; Ford v. United States, 9 Cir., 10 F.2d 339, 342, 343, affirmed 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (this point not discussed); Grace v. United States, 5 Cir., 4 F.2d 658; United States v. Prieth, D.C.N.J., 251 F. 946, 955; 11 Am.Jur., Conspiracy, § 29. See 15 C.J. S., Conspiracy, § 85.

[8] Heskett v. United States, 9 Cir., 58 F.2d 897; Stephens v. United States, 9 Cir., 41 F.2d 440, 443; Gruher v. United States, 2 Cir., 255 F. 474; 15 C.J.S., Conspiracy, § 88, subsec. b.

[9] Allen v. United States, 4 Cir., 89 F. 2d 954; Baugh v. United States, 9 Cir., 27 F.2d 257; Miller v. United States, 7 Cir., 4 F.2d 228; Berkowitz v. United States, 3 Cir., 93 F. 452, 455, 460; 15 C.J.S., Conspiracy, § 43, subsec. b(2). See Weiss v. United States, 3 Cir., 103 F.2d 759.

340

The charge is most serious. Appellees are charged with conspiring to impede the work of the Selective Service System when we were preparing for what has now become this nation's crisis. The indictment labels a registrant a conniving draft dodger, and charges a lawyer with agreeing to break the law rather than following his profession of being a helpful counselor. To sustain these charges there must be proved, inter alia, an overt act. In this case as in other cases, anything done prior to the alleged agreement to commit the offense-object cannot be spelled into an overt act. Prior behavior, however, might tend to disprove intent or even the existence of the conspiracy. The overt acts set forth in this indictment reveal to some extent what may well have happened. And the revelation, for the most part, shows no necessarily improper conduct. Of course it is well settled that an overt act need not be a wrong. It is rather a manifestation that the conspiracy is at work. But it must be that. When the evidence is taken on the overt acts, a scheme to flout the Selective Service System may stand stark naked. On the other hand, it may be shown that appellees, instead of agreeing to take the law into their own hands, were engaged in bringing all facts and all considerations to the attention of the Local Board, which the statute, the rules, and the regulations contemplate, and which is a natural function of a lawyer and a registrant. A freedom of consultation is necessary in the attorney-client relationship if anything like the truth is to be ferreted out. A freedom of conference between lawyers and governmental bodies is necessary to protect the people concerned, and, in addition, it assists the agency to treat justly all who are affected by its actions. True, the facts of this case have not been developed, so strictly speaking our only concern is with the sufficiency of the indictment, but in the interests of a free people, preserving the dignity of the individual as much as possible while organizing our nation's forces to battle in that behalf, we make it our concern to flash a signal of warning. Perchance this is not adjudication as usual, but if we can add one title to the preservation of man's worth behind the lines, we accept the concomitant responsibility.

Reversed.