**UNITED STATES of America**
**v.**
**David BORLAND et al.**
**Crim. A. No. 1936.**

United States District Court,
D. Delaware.
Feb. 9, 1970.

F. L. Peter Stone, U. S. Atty., and Norman Levine, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Bruce M. Stargatt and Jack B. Jacobs of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendants Arthur Wilson and St. Clair O. Parsons.

## OPINION

LATCHUM, District Judge.

The Grand Jury returned an indictment on December 18, 1968 in which Arthur Wilson and St. Clair O. Parsons were charged with conspiring to violate 29 U.S.C. § 186(b) (1), 18 U.S.C. § 1001 and 18 U.S.C. § 2314. The background facts out of which the indictment arose may be summarized as follows:

Defendant Wilson is the president and defendant Parsons the business delegate of Local Union 1694, International Longshoremen's Association. Members of the local union are employed by Wilmington Stevedores, Inc. to unload vessels at the Wilmington Marine Terminal. The contract between Wilmington Stevedores, Inc. and the union requires a specified number of workers to unload each hole of a ship docked at the Marine Terminal. The number of workers required varies with the size and type of cargo. The group employed to unload a hole of a ship is normally referred to as a work

gang. Each individual longshoreman is assigned a five digit number, called a "port number", which is recorded in the timekeeper's book on the day that the individual works. Salary checks are made out in accordance with the hours of work attributed to each individual, as identified by his port number on the company records.

The indictment charges that it was part of the conspiracy for the defendants to cause the port numbers of individuals to be recorded in the records of the company on days when the individuals were not working. As a result of this alleged falsification, payroll checks would be made payable to individuals for time periods when they had not been at work. After obtaining these checks by fraud and forging the signatures of the payees, the conspirators would then retain the proceeds of the forged checks or otherwise cause the proceeds to be distributed to other than the named payees of the payroll checks.

The defendants have based their motion for dismissal of the conspiracy counts on three principal grounds:[1] first, that the object of the conspiracy stated in subparagraph (a) of Count I is not an offense under § 302(b) of the Labor Management Relations Act of 1967, 29 U.S.C. § 186(b); second, that Count I is impermissibly vague in describing the offenses alleged in subsections (b) and (c) as the second and third objects of the conspiracy; third, that subsection (c) of Count I fails to negate the statutory exception to the offense defined by 18 U.S.C. § 2314.[2]

---

1. Defendant Arthur Wilson was indicted for conspiracy under Count I of the indictment. Defendant St. Clair O. Parsons was indicted for conspiracy under Count II of the indictment. Except for the reference to different individuals, Counts I and II are substantially identical. For convenience in considering the objections of defendants to the conspiracy counts of the indictment, only Count I will be referred to.

2. COUNT I of the indictment reads:
"1. From on or about the 1st day of January 1965, and continuously there-

after up to and including the 31st day of December 1967, in the District of Delaware and elsewhere, DAVID BORLAND and ARTHUR WILSON, the defendants, wilfully and knowingly did combine, conspire, confederate and agree together and with each other and with diverse other persons to commit offenses against the United States, that is:—
"(a) To cause ARTHUR WILSON, a representative of employees employed in an industry affecting commerce, that is, President of the International Longshoremen's Association, Local 1694, to receive and accept sums of money from Wilming-

Count I charges that the first object of the alleged conspiracy, subsection (a), was an offense in violation of section 302(b) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186 (b). An examination of the indictment, even viewed in the light most favorable to the government, reveals that the first object of the alleged conspiracy does not constitute an offense under section 302(b) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186 (b) (1). This section of the statute is concerned with the extortion or acceptance of bribes by union representatives for the purpose of impairing the normal processes and relationships of collective bargaining. There is no allegation in the indictment that any payment obtained through the scheme alleged in Count I was procured by the defendant union officers or given by the employer with the intent to affect the ordinary functioning of collective bargaining. The allegations of the indictment do not indicate that the stevedoring company issued the checks allegedly involved in the present scheme other than in the good faith belief that the employees identified by their port numbers were entitled to payment for the number of hours indicated by the timekeeper's records.

Arroyo v. United States, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959) held that § 302(b) was not intended to reach the kind of fraud allegedly involved in the present case. In *Arroyo*, the petitioner was the president of the union which represented the employees of two

---

ton Stevedores, Inc., the employer of said employees, in violation of Title 29, United States Code 186(b) (1).

"(b) In a matter within the jurisdiction of any department or agency of the United States to knowingly and wilfully cause the falsification and concealment by any trick, scheme and device a material fact and caused the making of a false writing and document knowing the same to contain any false, fictitious and fraudulent statement and entry in violation of Title 18, United States Code, Section 1001.

"(c) With unlawful and fraudulent intent, did cause to be transported in interstate commerce from Wilmington, Delaware to Philadelphia, Pennsylvania, falsely made and forged securities, that is bank checks, knowing the same to be falsely made and forged in violation of Title 18 United States Code, Section 2314.

"2. It was a part of the said conspiracy that the defendants would cause the port numbers of certain persons who were not working to be recorded in the payroll records of Wilmington Stevedores, Inc., so that those who had not worked would be issued payroll checks by Wilmington Stevedores, Inc.

"3. It was further a part of the conspiracy that the payroll checks would be obtained and that the signatures of the payees would be forged.

"4. It was further a part of the conspiracy that the conspirators would retain for themselves or otherwise cause the proceeds of those payroll checks to be distributed to others than those named as payees on the payroll checks.

"In Furtherance of the aforesaid conspiracy and during its continuance, and for the purpose of effecting the object of said conspiracy, the following OVERT ACTS were committed in violation of Title 18 United States Code, Section 371:

"1. Defendant, DAVID BORLAND, did enter into the book kept by him from which the payroll of Wilmington Stevedores, Inc., was compiled, port numbers of individuals on days on which he knew those individuals were not working.

"2. Defendant, ARTHUR WILSON, did give to defendant, DAVID BORLAND, the port number of ROBERT WILSON, to be recorded in the book kept by David Borland from which the payroll of Wilmington Stevedores, Inc., was compiled on days on which he knew Robert Wilson was not working.

"3. Defendant ARTHUR WILSON did receive more than one payroll check from the Wilmington Stevedores, Inc., including payroll checks with the name of an individual, other than himself as payee.

"4. Defendant, ARTHUR WILSON, gave an individual the authority to give to David Borland the port number of someone in addition to the individual's own port number for the purpose of having David Borland record that port number in the book kept by him from which the payroll of Wilmington Stevedores, Inc., was compiled."

COUNT II is substantially identical, making its reproduction unnecessary.

affiliated corporations. The petitioner, in his capacity as a union leader and representative on a joint committee administering the union welfare fund, asked the employer to give him two $7500 checks for deposit to the welfare fund. The union representative, however, did not deposit the checks to the existing welfare fund but instead placed them in another account. He subsequently withdrew the funds from this account and converted the funds to his own use.

Although the Supreme Court in *Arroyo* considered the petitioner's fraud "reprehensible and immoral" and assumed that it was punishable under "state criminal law", the Court nevertheless found that the petitioner's conduct was not within the purview of § 302(b). After careful analysis of the legislative history of § 302 the Supreme Court concluded that "[w]hen Congress enacted § 302 its purpose was not to assist the States in punishing criminal conduct traditionally within their jurisdiction, but to deal with problems peculiar to collective bargaining." [3] Referring to the Congressional debates at the time of the consideration and passage of the Labor Relations Act of 1947, the Court pointed out that "there was not the slightest indication that § 302 was intended to duplicate state criminal laws. Those members of Congress who supported the amendment were concerned with corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole con-

trol." [4] Count I of the indictment here under consideration does not charge extortion or acceptance of any payment intended to affect the collective bargaining relationship between Union Local 1694 and Wilmington Stevedores, Inc. Since the allegations of Count I do not charge the defendants with any offense which § 302 was intended to cover, the first object of the conspiracy (Count I, subsection (a)) charging the commission of such a crime must be stricken.

The government's attempt to distinguish *Arroyo* is not persuasive. According to the government, the checks misappropriated in *Arroyo* were "paid to a trust fund" within the specific terms of the exemption provided by § 302(c) (5) and therefore their receipt by the petitioner was not prohibited under the terms of § 302(b). In contrast, the government urges that in the present action the checks whose misappropriation was the object of the conspiracy were not payments exempt under any provision of § 302(c) and, therefore, their fraudulent procurement by union officials was not beyond the coverage of the statute.

In *Arroyo*, the Supreme Court found that the misappropriated checks had been "paid to a trust fund" within the precise terms of § 302(c) (5) and, therefore, the receipt and misappropriation of the checks by the union representative was not within the scope of § 302 (b).[5] The syllogism followed in *Arroyo*, therefore, is not applicable, since the checks allegedly misappropriated here were not within one of the categories of payment exempt under § 302 (c),[6] as were the checks "paid to a

3. 359 U.S. 419, 424–425, 79 S.Ct. 864, 867–868.

4. 359 U.S. 419, 425–426, 79 S.Ct. 864, 868.

5. "The checks were drawn by the employers and delivered to the petitioner as payment to a union welfare fund. Their receipt by him, therefore, was not a violation of the federal statute, whether his intent to misappropriate existed at the time or was formed later." 359 U.S. at 424,

6. Exempt under § 302(c) (1) are payments made to any employee "whose established duties include acting openly for such employer in matters of labor relations or personnel administration" or to "any representative of his employees" or "any officer or employee of a labor organization" who "is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer." § 302(c) (1), 29 U.S.C. § 186(c) (1). There is

trust fund" in *Arroyo*. The question before this Court, therefore, is whether the fraudulent procurement and misappropriation of *payroll* checks here should be found prohibited by § 302(b), while the misappropriation of checks "paid to a trust fund" in *Arroyo* was found to be beyond the scope of § 302(b).

The basic premise of *Arroyo* was that § 302(b) was concerned with bribery and extortion affecting the process of collective bargaining, and not with the duplication of existing state criminal law. Starting with the recognition that § 302(b) was concerned with protecting the process of collective bargaining, it is difficult for this Court to conclude that § 302(b) exempts from punishment the misappropriation of checks payable to a union welfare fund, but at the same time makes punishable the misappropriation of payroll checks. In light of the purpose of § 302(b) to protect collective bargaining, there is no reason to punish one type of fraud, but not the other. Further, to find § 302(b) applicable in this case but not in the circumstances of *Arroyo* would require further irrational distinctions to be made in the application of the statute. For example, if a scheme were directed to stealing and forging only the salary checks of union officers or other employee representatives covered by § 302(c) (1), such larceny, according to the government's position, would be exempt from the coverage of the statute "because the *delivery* of

checks was a lawful payment, being within the confines of a recognized exception to [§ 302(b)]." The checks which were to be stolen would be payment to a representative of employees as compensation for or by reason of, his service "as an employee." The checks would come within the literal terms of the exemption provided by § 302(c) (1) and therefore, their receipt, regardless of when the intent to misappropriate the checks was formed, would not be within the coverage of the statute. In contrast, in the present case, where checks payable to employees not within the categories of § 302(c) (1) were misappropriated, the statute would apply.[7] This is an absurd result—a result which confirms that in light of *Arroyo* the first object of the present controversy does not constitute an offense under § 302(b).

Defendants also challenge the second object of the conspiracy as vague and legally insufficient. The second object of the conspiracy, according to subsection (b) was "[i]n a matter within the jurisdiction of any department or agency of the United States to knowingly and wilfully cause the falsification and concealment by any trick, scheme and device a material fact and caused (sic) the making of a false writing and document knowing the same to contain any false, fictitious, and fraudulent statement and entry in violation of [18 U.S.C. § 1001]." This charge closely follows the wording of 18 U.S.C. § 1001.[8]

no indication in the indictment that the employees for whom checks were issued in reliance on the allegedly falsified payroll records were covered by the categories of § 302(c) (1). The payments to such employees not covered by the employee categories of § 302(c) (1), therefore, would not be exempt payments under § 302(c) (1). Further, since it is alleged that these checks were converted by the defendants to their personal use and benefit, it cannot be said that these checks were "payable" to the defendants "as compensation for, or by reason of * * * service as an employee of such employer" within the terms of § 302(c) (1).

7. In relying on a literal construction of the statute in *Arroyo* the Supreme Court concluded that "[a]n examination of the legislative history confirms that a literal construction of this statute does no violence to common sense." 359 U.S. 419, 424, 79 S.Ct. 864, 867. The literal reading of the statute urged by the government here, however, would do violence to common sense and would disregard the clear legislative history of § 302 which the Court recognized in *Arroyo*.

8. 18 U.S.C. § 1001, 62 Stat. 749, provides as follows: "Whoever, in any matter within the jurisdiction of any department

The general test for the sufficiency of an indictment is whether it contains the elements of the offense intended to be charged, whether it sufficiently apprises the defendant of the charges which he must be prepared to meet and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a formal acquittal or conviction.[9] When the indictment charges a conspiracy to commit offenses against the United States, however, it is well established that "it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy * * * or to state such object with the detail which would be required in an indictment for committing a substantive offense * *. In charging such a conspiracy 'certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary.' "[10] The elements of the offense of conspiracy are the agreement, the offense object towards which the agreement is directed, and an overt act.[11]

The sufficiency of an indictment charging a conspiracy to violate 18 U.S.C. § 1001 was considered thoroughly in United States v. Devine's Milk Laboratories, 179 F.Supp. 799 (D.Mass.1960). In Devine's Milk Laboratories, the corporation and three of its officers were charged in a one count indictment with having conspired "to commit certain offenses [in violation of] Title 18 United States Code §§ 287 and 1001, to knowingly and wilfully make and use, and cause to be made and used, false, fraudulent and fictitious statements in matters within the jurisdiction of the Department of the Army, an agency of the United States," and to "knowingly and wilfully make and present false, fictitious and fraudulent claims to the Department of the Army."[12] A list of twenty-six overt acts was appended to the charge. The defendants moved that the indictment be dismissed because it was "so vague, general and indefinite" that it did not apprise defendants of the offense charged so as to enable them to prepare a defense thereto and also did not bar a second prosecution for the same offense.[13] The government contended that the indictment was sufficient because it set out "all the elements of the alleged offense in the language of the applicable statutes."[14]

Considering the sufficiency of the indictment without reference to the overt acts, the Court recognized that while "an indictment charging conspiracy to commit a crime need not set out that crime with all the particularity necessary in an indictment charging that crime as a substantive offense", the conspiracy indictment should at least be sufficiently detailed "to enable the defendants to know what specific offenses they are charged with conspiring to commit."[15]

---

or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

9. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. Airdo, 380 F.2d 103 (7th Cir. 1967), cert. den. 389 U.S. 913, 88 S.Ct. 238, 19 L.Ed.2d 260 (1967); United States v. Kahn, 381 F.2d 824 (7th Cir. 1967), cert. den. 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967).

10. Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 176, 52 L.Ed. 278 (1908); Wong Tai v. United States, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927); United States v. Guterma, 189 F.Supp. 265, 269 (S.D.N.Y.1960).

11. United States v. Guterma, 189 F.Supp. 265; United States v. Offutt, 75 U.S. App.D.C. 344, 127 F.2d 336, 338 (1942).

12. 179 F.Supp. 799, 800.

13. Ibid.

14. Ibid.

15. 179 F.Supp. 799, 800.

Judge Ford went on to hold that the general language of the indictment, which essentially repeated the language of the statute, did not meet this standard of sufficiency because the indictment failed to "indicate what specific false statements or claims were to be made or presented, or even indicate the transaction or even the general subject matter in connection with which any false statements or claims were to be made or presented." [16]

In United States v. Apex Distributing Company, 148 F.Supp. 365 (D.R.I.1957) the statement that an object of a conspiracy was "the crime of bribery in violation of Title 18, United States Code § 201" was held insufficient. The Court noted that no details or particulars concerning the crime were given. "There is no indication of the person whom the defendants planned to bribe, no statement of his connection with the United States government, no description of the bribe which was promised, offered or given or of the purpose for which it was promised or offered or given." The Court concluded that "[w]hile it is true that where the object of a conspiracy is to commit a crime, the crime to be committed need not be described with the same degree of particularity that might be required in an indictment charging its commission as a substantive offense, this does not mean that no particulars whatever as to such crime need be given. And this is especially true where the statute employs broad and comprehensive language descriptive of

the general nature of the offense denounced." [17] This rule is only a particular application of the "elementary principle of criminal pleading, that where the definition of an offense * * * 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars.' United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588 * * * Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." [18]

The Court of Appeals for the Third Circuit has considered the standards of sufficiency for an indictment charging conspiracy in United States v. Knox Coal Company, 347 F.2d 33 (3rd Cir. 1965). In *Knox,* four individual defendants were charged in a multi-count indictment, with conspiracy to evade and defeat the payment of corporate income taxes. The conspiracy count charged that the object of the conspiracy was "to commit certain offenses against the United States, to wit:

(a) The offenses of wilful attempts to evade and defeat, corporate income taxes of Knox Coal Company for the fiscal year ended June 30, 1957, a felony, in violation of Section 7201 of Title 26 of the United States Code."

16. Ibid. In *Devine's Milk* the government further contended that any deficiency in the charging part of the indictment was overcome when the overt acts alleged in the indictment were considered. Judge Ford, however, found that although overt acts alleged may be used to explain the conspiracy portion of an indictment these acts cannot be used "to establish the sufficiency of the allegations of the charging part of [a] conspiracy indictment which is in itself insufficient and makes no reference to the overt acts for clarification of its meaning." 179 F.Supp. 799, 801.

17. 148 F.Supp. 365, 370.

18. Russell v. United States, 369 U.S. 749, 765–766, 82 S.Ct. 1038, 1047–1048, 8 L.Ed. 2d 240 (1962). See also Pettibone v. United States, 148 U.S. 197, 202–204, 13 S.Ct. 542, 37 L.Ed. 419 (1893). The Supreme Court in *Russell* went on to note that the "full vitality" of these "basic principles of fundamental fairness" under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure, was illustrated by "many recent federal decisions" including United States v. Devine's Milk Laboratories, *supra,* and United States v. Apex Distributing Company, *supra.*

The Court stated that if the conspiracy count stated no more than the above quoted paragraph, "it would be insufficient." The Court, noted, however, that the count did not end at this point, but went on to state that "the Grand Jury further charges that the conspiracy was to be accomplished by the 'means and method and in the manner following:' * * *." [19] These means, as described in the indictment, included the making of false payroll records, the payment of funds of the corporation as salary to the fictitious employees, and the filing of Federal income tax returns claiming deductions for wages and salaries paid to these fictitious employees. The indictment then set out 13 overt acts in furtherance of the conspiracy; the first four overt acts stated that each of the four individual defendants respectively caused the name of a certain person to be listed on the payroll records of the Company; the next eight asserted that two of the defendants disbursed funds of the Company to the named individuals. The last paragraph averred that one of the individual defendants filed false Federal income tax return for the company for the fiscal year ending in June, 1957.

In *Knox Coal,* two basic challenges were made to the sufficiency of the conspiracy count of the indictment; first, that the charging part of the indictment failed to state that a tax in excess of that reported was due; second, that the count "[did] not fully and clearly set forth the purpose of the conspiracy." [20] As a basis for rejecting the first attack on the sufficiency of the conspiracy count, the Court noted the general rule that a "conspiracy count need not plead the substantive offense letter-perfect."[21] The statement of such a general rule of course does not decide a particular case, but is a proper reminder to avoid a technical and narrow reading of an indictment.

As to its disposition of the second challenge to the sufficiency of the indictment, the Court's basis of decision is less clear. As noted above, the Court initially had determined that the allegation that the objects of the conspiracy were the offenses of wilful attempts to evade and defeat, corporate income taxes of Knox Coal Company for the fiscal year ended June 30, 1957, "would be insufficient" to adequately describe the purpose of the conspiracy.[22] The Court noted that the conspiracy count did not stop at this point, however, but went on to delineate the "means and method" by which the conspiracy was to be accomplished.[23] After describing the "means and method" the count then listed 13 overt acts allegedly committed in furtherance of the conspiracy. The defendant argued that the further charges concerning the "means and method" could not be considered a part of the charging part of the indictment but the Court found this contention "without merit." [24]

Although the Court of Appeals is not explicit about its basis for decision, it appears that the Court relied on the further charges of the Grand Jury as to the "means and method" by which the conspiracy was to be accomplished in finding the statement of the objects of the conspiracy sufficient. If this is the basis for the Court's conclusion, then, it is difficult to reconcile this conclusion with the Court's seeming approval of the rule that overt acts may not be relied on to remedy any insufficiency in the charging language itself, unless the overt acts are specifically referred to in the charging part of the indictment. If an indictment, after describing the object of a conspiracy, stated that the Grand Jury further charges the conspiracy was to be accomplished by certain means and methods, is it the rule that allegations of acts under such a heading may be referred to in order to remedy any insufficiency in the description of the object of the conspi-

---

19. 347 F.2d 33, 39.

20. 347 F.2d 33, 38.

21. Ibid.

22. 347 F.2d 33, 39.

23. 347 F.2d 33, 39.

24. Ibid.

racy, but the same acts if not denominated "means and methods", or otherwise specifically referred to in the charging part of the indictment, may not be referred to in order to clarify the language of the "charging part" of the indictment?

Such a rule would rest on highly artificial, if not impossible, semantic distinctions. The overt acts in Count I of the present indictment are introduced in this way. "In furtherance of the aforesaid conspiracy and during its continuance, and for the purpose of effecting the object of said conspiracy, the following OVERT ACTS were committed in violation of Title 18 United States Code, Section 371 * * *." The allegation that certain overt acts were commited "for the purpose of effecting the object of said conspiracy" seems no different than the allegation that "the object of said conspiracy" was to be accomplished by certain "means and methods."

■ This Court cannot conclude that the Court of Appeals for this Circuit intended to make such semantic distinctions relevant in determining the sufficiency of an indictment. Because the Court in *Knox* permitted reference to acts described as the "means and method" of the conspiracy in order to clarify the purpose of the conspiracy, this Court finds that the rule requiring specific reference to overt acts in order to rely on them for clarification of the charging part of the conspiracy count was not the holding of the Court, and was not intended to bind a District Court in the present situation. In considering the sufficiency of the statement of the objects of the conspiracy, therefore, reference may be made to the overt acts alleged.

■ Applying the guiding principles of *Knox Coal, Devine's Milk* and *Apex Distributing* to the present case, this Court concludes that the second object of the conspiracy is impermissibly vague and therefore insufficient to state an offense. Even though this Court has interpreted *Knox Coal* to permit reference to the overt acts of a particular count of an indictment in order to clarify the nature of the object offenses of the conspiracy, reference to the overt acts of the conspiracy count here does not in any way clarify the second object of the conspiracy. The four overt acts in the conspiracy count of the indictment totally fail to indicate in any way the nature of the false information, or the agency to which the false information was to be submitted. [25]

Having found that reference to these overt acts in no way clarifies the second object offense of the conspiracy, the statement of the object alone, a mere paraphrase of the "broad and comprehensive" language of 18 U.S.C. § 1001, is clearly insufficient under *Knox Coal* and *Apex Distributing*.

■ The defendants also challenge the third object [Count I, subsection (c)] of the conspiracy as impermissibly vague,

25. The overt acts charged in Count I of the indictment are stated as follows:
"In Furtherance of the aforesaid conspiracy and during its continuance, and for the purpose of effecting the object of said conspiracy, the following OVERT ACTS were committed in violation of [18 U.S.C. § 371]:
"1. Defendant, DAVID BORLAND, did enter into the book kept by him from which the payroll of Wilmington Stevedores, Inc., was compiled, port numbers of individuals on days on which he knew those individuals were not working.
"2. Defendant, ARTHUR WILSON, did give to defendant, DAVID BORLAND, the port number of ROBERT WILSON, to be recorded in the book kept by David Borland from which the payroll of Wilmington Stevedores, Inc., was compiled on days on which he knew Robert Wilson was not working.
"3. Defendant ARTHUR WILSON did receive more than one payroll check from the Wilmington Stevedores, Inc., including payroll checks with the name of an individual, other than himself as payee.
"4. Defendant, ARTHUR WILSON, gave an individual the authority to give to David Borland the port number of someone in addition to the individual's own port number for the purpose of having David Borland record that port number in the book kept by him from which the payroll of Wilmington Stevedores, Inc., was compiled."

asserting that subsection (c) of Count I [26] fails to identify sufficiently the checks alleged to have been forged (i.e. "by date, payor, payee, drawer or drawee") and also fails to set forth the dates upon which the forged checks allegedly were transported from Philadelphia to Wilmington. The provision of this degree of detail, however, is not essential to fulfill the basic function of an indictment.

In United States v. Guterma, 189 F. Supp. 265 (S.D.N.Y.1960), the indictment charged, *inter alia,* a conspiracy to violate the Securities Act of 1933 and the Securities and Exchange Act of 1934. Part of the alleged conspiracy was the filing of a particular annual report of the corporate defendants which would omit required information concerning the material interest of an officer or director or stockholder. The defendants attacked the sufficiency of the conspiracy count because it failed to indicate the information omitted, the material interest of the person named or the identity of the transactions. In rejecting this attack on the sufficiency of the conspiracy count, the Court concluded: "Details of the specificity urged by the defendants to be necessary can by no effort be stretched to essentials." [27] The defendants complain of the failure of Count I to include allegations more detailed than the allegations found necessary in *Guterma, supra.* The provision of such detail is not essential to fulfill the basic functions of an indictment. As the Court stated in *Guterma, supra:* "It is the agreement and the offense-object which must be clearly described, not the detailed participation of each defendant." [28]

Finally, the defendants assert that the third object [Count I (c)] of the conspiracy is defective because it fails to negate the statutory exception to the offense defined by 18 U.S.C. § 2314. This statute prohibits the interstate transportation of "any falsely made, forged, altered or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered or counterfeited * * *." [29] Exempt from the coverage of this statute are securities and other obligations of the United States and foreign governments and corporations. [30] Because the allegations of Count I do not exclude the transportation of securities of the United States and of foreign governments and corporations as an object of the conspiracy, defendants contend that the allegations of the third object of the conspiracy in subparagraph (c) are fatally defective.

■ This Court cannot agree. It is well established that an indictment "need not negative a statutory exception unless the exception is so inseparable from a true definition of the offense that the ingredients of the offense cannot accurately be described if the exception is omitted." United States v. Pope, 189 F.Supp. 12, 18 (S.D.N.Y.1960). In *Pope,* an indictment alleged various substantive violations of Securities Act reporting requirements. The reporting requirement in question, however, did not apply to any transaction or interest therein where the interest of the individual did not exceed $30,000. Relying on this exception, the defendants in *Pope* asked dismissal of one count of the indictment on the ground that there was no allegation that the transaction

---

26. Count I, subsection (c) provides as follows:

"(c) With unlawful and fraudulent intent, did cause to be transported in interstate commerce from Wilmington, Delaware to Philadelphia, Pennsylvania, falsely made and forged securities, that is bank checks, knowing the same to be falsely made and forged in violation of Title 18 United States Code, Section 2314."

27. 189 F.Supp. 265, 269.

28. Ibid.

29. 18 U.S.C. § 2314, 70 Stat. 507.

30. "This section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an obligation or other security of the United States, or of an obligation, bond, certificate, security, treasury note, bill, promise to pay or bank note issued by any foreign government or by a bank or corporation of any foreign country."

in question exceeded the amount of $30,-000. Judge Weinfeld rejected this contention, ruling that because the reporting provision fully defined the duty of the registrant, the indictment was not defective for failing to exclude a transaction of less than $30,000 in value. As Judge Weinfeld stated, "[t]he exception is distinct and in no sense forms an integral part of the offense. It does not change the general duty imposed, but merely exempts a limited class of transactions which fall within its terms. Therefore, it need not be negatived. Whether or not the transactions come within the exception must await trial." [31]

The allegations of Count I of the present indictment sufficiently define the offense charged as the third object of the conspiracy. Count I charges a conspiracy to obtain payroll checks by fraud from Wilmington Stevedores, Inc. to forge the signatures of the payees of the checks so obtained, to retain the proceeds of the forged checks, and to transport the forged checks in interstate commerce. Whether any checks were forged and transported in interstate commerce must of course be proved beyond a reasonable doubt at trial. If any conduct with which defendants are charged comes within an exception to the coverage of § 2314, this fact may be established at trial. The third object of the conspiracy, however, is stated with sufficient particularity to comply with the basic standards of fairness and clarity required by Rule 7(c) and by the Sixth Amendment.

In summary, this Court finds that the allegations of Count I of the indictment are insufficient to indicate that the offenses charged by subsections (a) and (b) were objects of the conspiracy alleged by Count I. These defective portions of Count I must be considered as surplusage and withdrawn from the con-

sideration of the jury.[32] The elimination of these defective parts of the indictment does not, however, require striking the remaining portions of Count I. Subsection (c), together with the remaining allegations of Count I, properly charges a conspiracy to transport forged bank checks in violation of 18 U.S.C. § 2314.[33]

An Order will be entered in accordance with this Opinion.

---

31. 189 F.Supp. 12, 18–19.

32. Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 71 L.Ed. 793 (1927); United States v. Apex Distributing Company, 148 F.Supp. 365, 370.

33. United States v. Apex Dsitributing Company, *supra.*