**UNITED STATES v. UNITED STATES GYPSUM CO. et al.**

**No. 66008.**

District Court of the United States for the District of Columbia.

Feb. 26, 1941.

400

Grant W. Kelleher, Sp. Asst. to the Atty. Gen. (Thurman Arnold, Asst. Atty. Gen., and George B. Haddock, Edward J. Hickey, Jr., and Arthur S. Clark, Jr., Sp. Attys., all of Washington, D. C., on the briefs), for the United States.

O. Max Gardner, Harold F. McGuire (of Gardner, Morrison, Rogers & McGuire), both of Washington, D. C., Edward R. Johnston (of Poppenhusen, Johnston, Thompson & Raymond), of Chicago, Ill., Leonard B. Ettelson, Stephen J. Allie, and Erwin M. Treusch (of Samuel A. & Leonard B. Ettelson), all of Chicago, Ill., Black, Varian & Simon, of New York City, Benjamin P. DeWitt, of New York City, Ralph P. Wanlass, of Washington, D. C., Bruce Bromley and Eugene E. Ford (of Cravath, de Gersdorff, Swaine & Wood), both of New York City, Richard H. Wilmer and Douglas L. Hatch (of Cravath, de Gersdorff, Swaine & Wood), both of Washington, D. C., John Lord O'Brian (of Slee, O'Brian, Héllings & Ulsh), of Buffalo, N. Y., Elmer E. Finck, of Buffalo, N. Y., for defendants.

MORRIS, Justice.

On June 28, 1940, an indictment was returned in this Court by the grand jury, charging the defendants (five corporations and nine individuals) with violation of Sections 1 and 3 of the Sherman Anti-Trust

Act, 26 Stat. 209, 15 U.S.C.A. §§ 1, 3.[1] All defendants entered a plea of not guilty and thereafter leave was granted by the Court to the defendants to withdraw the pleas of not guilty, and to file demurrers or other preliminary motions within thirty days. No demurrer was filed by any of the defendants within such period. However, the defendants have joined in a single motion for a bill of particulars, and the case is now before the Court on such motion, upon which arguments have been heard and extensive briefs have been submitted.

In substance the indictment charges a single combination and conspiracy—a combination and conspiracy to fix and make uniform the resale prices charged for gypsum wall board and gypsum plaster board by manufacturers of gypsum products other than gypsum board (the indictment refers to such manufacturers as "distributors") who purchased their gypsum board requirements from manufacturers of gypsum board (the indictment refers to the gypsum board manufacturers as "manufacturers"). The parties to the alleged combination and conspiracy fall into the following separate classes: (1) Five corporations, now engaged in the manufacture and sale of gypsum board, and named as defendants; (2) four corporations, formerly engaged in the manufacture and sale of gypsum board, but not in existence at the time of the return of the indictment, and therefore named as co-conspirators, but not named as defendants; (3) twelve corporations engaged only in the wholesale distribution of gypsum board and named as co-conspirators, but not named as defendants; and (4) nine individuals, eight of whom are officers or employees of the defendant companies, and one of whom was an employee of one of the manufacturers named as a co-conspirator.

The indictment describes the method by which the alleged combination and conspiracy was entered into and effectuated over a period beginning in the year 1929 and continuing to the date of the indictment. It is charged that the defendant United States Gypsum Company, which owned a number of patents covering gypsum board, had licensed the manufacture of that product by the other manufacturers by agreements permitting the United States Gypsum Company to fix prices and other terms and conditions of sale by the manufacturers, and which required the written consent of the United States Gypsum Company to sales by manufacturers to distributors. Neither the license agreements, as such, nor the price fixing, or other provisions therein contained, as such, are claimed to be illegal, but it is charged that the alleged combination and conspiracy resulted because the United States Gypsum Company, as a condition to its consent to sales of gypsum board to distributors at a price below that which it charged to dealers, required distributors to maintain and adhere to United States Gypsum Company dealer prices in reselling such gypsum board to dealers and consumers. It is further charged that the manufacturers agreed among themselves to sell gypsum board to distributors at a price below United States Gypsum dealer prices only on condition that distributors maintain and adhere to United States Gypsum Company dealer prices in reselling to dealers and consumers. It is further charged that the manufacturers required the distributors, as a condition of sale, to agree, and the distributors did agree, to resell at United States Gypsum Company dealer prices such gypsum board as was purchased by the distributors from the manufacturers. The indictment sets forth other acts by defendants and co-conspirators, not named as defendants, pursuant to the alleged combination and conspiracy.[2]

The defendants, by their motion for a bill of particulars, seek definite and specific particularization in detail as to substantially every act mentioned in the indictment. The motion consists of seventeen sections and thirty-five subsections, a summary of which is given in the margin.[2]

[1] Section 1 of the Sherman Act declares illegal contracts, combinations and conspiracies in restraint of trade or commerce among the several States. Section 3 declares illegal contracts, combinations, and conspiracies in restraint of trade or commerce in the District of Columbia or between the States and the District of Columbia.

[2] 1. Paragraph 5 of the indictment alleges that the individual defendants have authorized, ordered, or done the acts charged to be illegal by the indictment. Section 1 of the motion requests that the Government (a) specify the acts which each defendant did personally; (b) specify the acts which each defendant ordered or authorized; and (c) iden-

**■** The proper office of a bill of particulars in criminal cases is to furnish to the defendant further information respecting the charge stated in the indictment when necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial. An accused is entitled "to be informed of the nature and cause of the accusation" against which he is to defend himself, and this is so, I think, even though what is needed is an identification, within reasonable limits, of information in the

---

tify and describe in respect of each act authorized or ordered the means and method whereby each defendant authorized or ordered such act.

2. Paragraph 9 of the indictment alleges that a substantial part of the gypsum board produced by the manufacturers was sold in interstate commerce to the distributors. Section 2 of the motion requests that the Government specify the percentage of gypsum board produced by each of the manufacturers during each year of the period covered by the indictment which it is claimed was sold to the distributors.

3. Paragraphs 10, 14, 23 and 33 of the indictment allege that the distributors resold gypsum board, purchased by them from the manufacturers, in commerce between the States and the District of Columbia to dealers and consumers within the District of Columbia. Section 3 of the motion requests that the Government state whether all or merely some of the distributors resold gypsum board in commerce between the States and the District of Columbia and, if the latter, which distributors so resold gypsum board.

4. Paragraphs 13, 14, 22, 23, 32 and 33 of the indictment charge the defendants and co-conspirators with engaging in an unlawful combination and conspiracy in restraint of trade and commerce in violation of section 3 of the Sherman Act, by engaging in an unlawful combination and conspiracy to fix and maintain the prices for gypsum board sold by the distributors in commerce between the States and the District of Columbia. Section 4 of the motion requests that the Government state when and how each defendant and each co-conspirator is claimed to have become a party to the combination and conspiracy.

5. Paragraphs 14, 23 and 33 of the indictment allege that "the manufacturers, including each of the defendant corporations, and the distributors, acting in part through the individuals named as defendants," were engaged in the combination and conspiracy. Section 5 of the motion requests that the Government state whether or not any of the distributors acted in part through the individual defendants, and, if so, to name the distributors and the individual defendants through whom each of said distributors

was so engaged in such combination and conspiracy.

6. Paragraphs 15, 24 and 34 of the indictment charge that, as a condition for the consent of United States Gypsum Company to sales by manufacturers to distributors at a discount below dealer prices, United States Gypsum Company required that the distributors maintain and adhere to United States Gypsum Company prices in their resales. Section 6 of the motion requests that the Government:

(a) Specify all times and places when and where, and the names of all persons, firms, or corporations from whom, such a condition was exacted by United States Gypsum Company.

(b) Specify the names of all persons representing United States Gypsum Company and representing each of said persons, firms, or corporations at all of said times.

(c) As to each time, specify whether the condition was oral or in writing; set forth a copy of all such writings; and state the substance of all oral conditions.

(d) State whether it is claimed there were any agreements between United States Gypsum Company and the manufacturers or United States Gypsum Company and the distributors, whereby the manufacturers were to require the distributors, or whereby the distributors were required, to maintain resale prices.

(e) If so, specify all times and places when and where each such agreement was made, specify the parties to each agreement and name the persons representing each party to each agreement, state whether each agreement was oral or in writing, set forth a copy of all such writings and state the substance of all oral agreements.

7. Paragraphs 15, 24 and 34 of the indictment charge that the manufacturers agreed among themselves to sell gypsum board to distributors at a discount below dealer prices only on condition that the distributors maintain and adhere to United States Gypsum Company prices in their resales. Section 7 of the motion requests that the Government:

(a) Specify all times and places when and where all such agreements were made.

(b) Specify all parties to each agreement and name all persons representing each of said parties.

possession of the accused, or the furnishing of information which in other circumstances would not be required because evidentiary in nature. An accused is not only entitled, as of right, to such information as is reasonably necessary to the preparation of his defense, but it is in accord with the present trend of adjudicatory procedure, both administrative and judicial, that the controversial issues should be narrowed to the extent of which they are susceptible, particularly is this true where, as here, the

(c) State whether each agreement was oral or in writing, set forth a copy of each such writing, and state the substance of each such oral agreement.

8. Paragraphs 15, 24 and 34 of the indictment allege that the distributors agreed to resell gypsum board at United States Gypsum Company dealer prices. Section 8 of the motion requests that the Government:

(a) Specify all times and places when and where all such agreements were made.

(b) Specify all parties to each agreement and name all persons representing each of said parties.

(c) State whether each agreement was oral or in writing, set forth a copy of each such writing, and state the substance of each of such oral agreements.

9. Paragraphs 15, 24 and 34 of the indictment allege that the manufacturers from time to time advised distributors of United States Gypsum Company dealer prices and changes therein. Section 9 of the motion requests that the Government:

(a) Specify all times and places when and where each manufacturer referred to or advised one or more distributors of prices or price changes.

(b) Specify, as to each time, each distributor who was so advised of prices or price changes, and name all persons representing the manufacturer and the distributor.

(c) State, as to each time, whether the advice was given orally or in writing, set forth a copy of each such writing, and state the substance of each oral communication.

10. Paragraphs 16, 25 and 35 of the indictment allege that the manufacturers and distributors investigated and policed sales by distributors and reported to United States Gypsum Company and among themselves resales by distributors at prices at variance with United States Gypsum Company prices. Section 10 of the motion requests that the Government:

(a) Specify what is meant by the word "policed" and whether it is intended to use such word synonymously with the word "investigated."

(b) Identify and describe the acts and means by which the manufacturers and distributors investigated sales by distributors.

(c) Identify and describe the acts and means by which the manufacturers and distributors policed sales by distributors.

(d) Identify each report of sales by distributors at variance with United States Gypsum Company prices, setting forth, with respect to each report, the name of the manufacturer or distributor reporting the sale and to whom such sale was reported, the time and place when and where each such sale was reported, the names of all persons representing the reporting manufacturer or distributor at each such time and place, a specification of whether the report was oral or in writing, setting forth a copy of all such writings and giving the substance of all such oral reports.

11. Paragraphs 16, 25 and 35 of the indictment allege that, throughout the period of the conspiracy, the manufacturers held numerous meetings at which there were discussions of sales by distributors at prices at variance with those of United States Gypsum Company and at which manufacturers supplying said distributors agreed to investigate and induce said distributors to maintain United States Gypsum Company prices. Section 11 of the motion requests that the Government:

(a) State the time and place of each meeting, specify all persons present at each, and set forth the substance of what transpired.

(b) Identify each sale by distributors at variance with United States Gypsum Company prices which was discussed at each of such meetings, specifying the date of sale, subject matter of sale, and names of manufacturer and distributor involved therein.

12. Paragraphs 17, 26 and 36 of the indictment allege that, from time to time throughout the period of the conspiracy, the manufacturers notified the distributors of alleged sales by the distributors at prices at variance with United States Gypsum Company prices for the purpose, and with the effect, of warning the distributors that they must maintain United States Gypsum Company prices in order to continue to purchase gypsum board from the manufacturers. Section 12 of the motion requests that the Government:

(a) Specify all times and places when and where the manufacturers so notified the distributors.

trial of the facts by a jury must proceed without serious interruption. But this does not mean that specific identification of particular constituent primary facts should be required where, by reasonable investigation in the light of information contained in the indictment, or otherwise furnished by the prosecution, a defendant will not be prejudicially surprised. And this principle is particularly important in cases involving conspiracies to violate the antitrust laws. Such cases, as here, involve entire industries and competitive factual situations covering lengthy periods of time. As stated by Mr. Justice Holmes in Swift & Company v. United States, 196 U.S. 375, 25 S.Ct. 276, 279, 49 L.Ed. 518: "The general objection is urged that the bill does not set forth sufficient definite or specific facts.

This objection is serious, but it seems to us inherent in the nature of the case. The scheme alleged is so vast that it presents a new problem in pleading. If, as we must assume, the scheme is entertained, it is, of course, contrary to the very words of the statute. Its size makes the violation of the law more conspicuous, and yet the same thing makes it impossible to fasten the principal fact to a certain time and place. The elements, too, are so numerous and shifting, even the constituent parts alleged are, and from their nature must be, so extensive in time and space, that something of the same impossibility applies to them. The law has been upheld, and therefore we are bound to enforce it notwithstanding these difficulties. On the other hand, we equally are bound, by the first princi-

---

(b) As to each time, specify the manufacturer and distributor involved and the names of all persons representing them.

(c) As to each time, state whether the notification was in writing or oral, set forth a copy of all written, and give the substance of all oral, notifications.

13. Paragraphs 17, 26 and 36 of the indictment allege that, in some instances, the manufacturers discontinued the sale of board to distributors because of their failure to maintain United States Gypsum Company prices. Section 13 of the motion requests that the Government identify each such instance by setting forth the date and the names of the manufacturer and distributor involved.

14. Paragraphs 18, 27 and 37 of the indictment allege that United States Gypsum Company refused to permit manufacturers to sell to certain companies selling gypsum products at wholesale, other than those named as co-conspirators, because of the reputation of such wholesale distributors for selling gypsum products at prices below prevailing prices. Section 14 of the motion requests that the Government:

(a) Specify all times and places when and where United States Gypsum Company so refused permission.

(b) As to each time, specify the manufacturer and wholesale distributor involved, and name all persons representing United States Gypsum Company and the manufacturer.

(c) As to each time, state whether the refusal was oral or in writing, set forth a copy of all written, and state the substance of all oral, refusals.

15. Paragraphs 18, 27 and 37 of the indictment allege that manufacturers refused to sell to certain companies selling gypsum products at wholesale, other

than those named as co-conspirators, because of the reputation of said companies for selling gypsum products at prices below prevailing prices. Section 15 of the motion requests that the Government:

(a) Specify all times and places when and where manufacturers refused to sell to such companies.

(b) As to each time, specify the manufacturer and wholesale distributor involved, and name all persons representing such manufacturer and wholesale distributor.

(c) As to each time, state whether the refusal was oral or in writing, set forth a copy of all written, and state the substance of all oral, refusals.

16. Paragraphs 20, 29 and 39 of the indictment allege that, within three years prior to the date of the indictment, some of the distributors have sold and delivered large quantities of gypsum board to dealers and consumers in the District of Columbia at United States Gypsum Company prices, have solicited orders from dealers and consumers in the District of Columbia, and have circulated numerous price lists and bulletins within the District of Columbia. Section 16 of the motion requests that the Government identify the distributors who have done one or more of such acts.

17. Paragraph 39 of the indictment alleges that some of the distributors, within three years prior to the date of the indictment, have, through sales offices located in the District of Columbia, sold and delivered large quantities of board, solicited and transmitted orders, and circulated numerous price lists and bulletins. Section 17 of the motion requests that the Government identify the distributors who have done one or more of such acts.

ples of justice, not to sanction a decree so vague as to put the whole conduct of the defendants' business at the peril of a summons for contempt. We cannot issue a general injunction against all possible breaches of the law. We must steer between these opposite difficulties as best we can." This was said with respect to the sufficiency of a bill in equity, challenged by a demurrer, but the same inherent difficulty of furnishing exact and specific information exists whether it be sought in the statement of the case, civil or criminal, or in a bill of particulars supplementary thereto.

In the light then of these two competing principles, I must conclude that the motion here under consideration cannot and should not be granted in its entirety. I do not consider, however, that, because the motion seeks specific description as to matters of which they are sufficiently informed in the indictment, or because it seeks information in extravagant detail respecting matters referred to in the indictment, but which are not sufficiently identified, the defendants should be denied such further information respecting the latter as will enable them, by reasonable diligence on their part, to avoid being prejudicially surprised at the trial. It must be borne in mind that many of the acts alleged in the indictment may be established, not by direct evidence, but by inference from numerous other facts and circumstances. Without knowledge of the material which the Government intends to make use of, it would be impossible for a court to determine the most practical means or indicia by which the Government should identify the acts as to which the defendants are entitled to further information. Doubtless the time of the happening of some particular act must be arrived at only within a reasonable range, and that by inference. It is not necessary for the protection of a defendant that acts respecting which he is entitled to further information be identified in any particular manner. The important thing is that in some reasonable manner they be identified. I have, therefore, concluded that many of the requests for particulars should be denied, and that certain of them should be allowed, to the extent, however, that the Government shall be permitted reasonable latitude, so that rigid specificity will not defeat the furnishing of information to which the defendants are entitled, or unduly hamper the Government in its proper prosecution of the case. When the information directed is furnished its sufficiency, if questioned, can then be better determined.

An order will, therefore, be entered, requiring the United States within sixty days to serve upon the attorneys for the moving defendants a bill of particulars, setting forth the information respecting the allegations of the indictment indicated below. It will be further ordered that such bill of particulars may be supplemented if the Government should subsequently learn of further particulars with respect to the allegations of the indictment as to which it is required to furnish information indicated below, such supplementary bill of particulars to be served within ten days after learning of such further particulars, provided service be at least ten days prior to the trial. In all respects, except as otherwise indicated, the motion for a bill of particulars will be denied.

1. (a) The acts charged to be illegal are sufficiently set out in paragraphs 15 to 18 of the indictment. By their nature they require a concert of action by the various defendants, and each of them should know whether or not they participated in the acts described in the indictment, or the extent of such participation. To require further specification would simply call for evidentiary matter.

(b) and (c). This is denied for the same reasons stated with respect to 1(a), and for the further reason that the means and methods whereby the corporate defendants acted are peculiarly within the knowledge of such defendants.

2. The failure to furnish the information here requested cannot prejudicially surprise the defendants, and the request is denied.

3. This request seeks information affecting the jurisdiction of the Court and the venue of the action. The defendants should be apprised to the extent that the Government has knowledge of such sales made by distributors in commerce between the States and the District of Columbia, and to dealers and consumers within the District of Columbia. Information which would enable the defendants to meet this charge is particularly necessary as it is not stated that such sales were made by any of the defendants, and information as to the sales made by alleged co-conspirators not defendants might not be available to

the defendants unless such sales were more particularly identified. The Government may identify such sales to the extent that it has knowledge thereof, with such particularity as to time, within reasonable limits, place, parties, or other information, as will enable the defendants to properly investigate the same.

4. The method by which each of the defendants is claimed to have become a party to the combination and conspiracy charged in the indictment is sufficiently described in the indictment. The Government should not be required to set out all of the circumstances attending the ultimate fact charged. The period covered, however, is that of eleven years, and a defendant is entitled to know within more reasonable limits the time during which it is charged such defendant became a part of such conspiracy, or, by other information, enabled to direct attention to corporate records and communications with the other defendants and alleged co-conspirators, so as to properly prepare a defense. The Government shall, therefore, furnish information within its knowledge as will, with such particularity as it can, advise each defendant of the time, within reasonable limits, when it is charged that such defendant became a party to the combination and conspiracy alleged in the indictment, or furnish such other information as will enable each defendant, by proper investigation, to adequately prepare a defense to the charge that such defendant did become a party to the combination and conspiracy charged.

5. In so far as acts done by alleged co-conspirators, not defendants, were accomplished through individual defendants in the District of Columbia, further information should be furnished by the Government respecting such acts so as to enable the defendants, by proper investigation, to prepare their defense. The Government shall furnish such information in its possession with respect to time, within reasonable limits, parties, or by other identification, as will accomplish this purpose.

6, 7 and 8. It is deemed that, if the information herein required in response to' other paragraphs of the motion is furnished, that, with the information set forth in the indictment, is sufficient to enable the defendants, by reasonable investigation, to properly prepare their defense.

9. Unless the information furnished in response to other paragraphs is sufficient to enable the defendants, by proper investigation, to prepare a defense to the acts referred to in this paragraph, the Government shall furnish such information in its possession with respect to time, within reasonable limits, parties, or by other identification, as will accomplish this purpose.

10. (a) The allegation here referred to is sufficiently clear in its meaning.

(b), (c) and (d) The information here requested is evidentiary in character and not necessary to enable the defendants to properly prepare their defense.

11, 12, 13, 14, 15, 16 and 17. Unless the information furnished in response to other paragraphs is sufficient to enable the defendants, by proper investigation, to prepare a defense to the acts referred to in these paragraphs, the Government shall furnish such information in its possession with respect to· time, within reasonable limits, parties, or by other identification, as will accomplish this purpose.