**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Vincent J. MANETTI, Cathy Pritchard, James M. Saunders, Geraldine Octavio Turner and Vandella W. Burke, Defendants.**

**Crim. A. No. 2052.**

United States District Court,
D. Delaware.

Feb. 8, 1971.

Joseph J. Longobardi, Jr., of Longobardi & Schwartz, Wilmington, Del., for defendants Vincent J. Manetti, Cathy Pritchard and Geraldine Octavio Turner.

Robert H. Richards, III, of Richards, Layton & Finger, Wilmington, Del., for defendant Vandella W. Burke.

Sidney Balick, of Aerenson & Balick, Wilmington, Del., for defendant James M. Saunders.

Norman Levine, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

STAPLETON, District Judge.

This case is currently before me on the following motions:

1. Motions of defendants Manetti, Pritchard, Turner and Burke to dismiss the indictment as to them on the ground that it is too vague and indefinite.

2. Motions of defendants Manetti, Pritchard and Turner to dismiss the indictment as to them on the ground that the dismissal of a prior indictment against them under Rule 48(a) of the Federal Rules of Criminal Procedure precluded further prosecution with respect to the same subject matter.

3. Motions of defendants Manetti, Pritchard, Turner and Burke to dismiss the indictment on the ground that the grand jury which returned it was the same panel which had been presented with illegally seized evidence in an earlier proceeding against some of the present defendants.

4. Motions of defendants Manetti, Pritchard, Saunders and Burke to permit inspection and copying of the grand jury record.

5. Motions of defendants Manetti, Pritchard, Turner and Burke for a bill of particulars.

6. Motion of defendant Burke to sever.

7. Motion of defendant Burke to transfer.

8. Motions of defendants Manetti, Pritchard, Turner and Burke to inspect certain documents and records.

## I. SUFFICIENCY OF THE INDICTMENT.

The indictment consists of one count. Paragraph 1 alleges that the defendants and certain other named individuals, from on or about December 1, 1965, until January 16, 1969, willfully conspired with each other and with "diverse other persons" to commit violations of Sections

1084 and 1952 of Title 18 of the United States Code.[1]

Paragraph 2 of the indictment charges that "it was a part of the conspiracy" that Manetti, Turner and one Jordan "did travel and cause travel in interstate commerce with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving gambling in the form of numbers writing, otherwise known as lottery policy writing, in violation of Title 11, Delaware Code, Sections 661, 662, 665 and 670(a) in violation of Title 18, United States Code, § 1952".

Paragraph 3 alleges "that it was further a part of said conspiracy, that defendants, being engaged in the business of numbers writing", did "knowingly cause" the use of telephone facilities for the transmission between specified points in Maryland and Delaware of "bets, wagers, information (sic.) which entitled betters and wagerers to receive money or credit as a result of bets or wagers, and other gambling information in violation of Title 18, United States Code, §§ 1084 and 1952".

Paragraph 4 alleges "that it was a part of said conspiracy that defendants would cause" the receiving of numbers bets and wagers at various specified points in Maryland and Delaware.

Paragraph 5 of the indictment alleges that "it was further part of the conspiracy that defendants would cause" interstate telephone communications of numbers bets, wagers and other gambling information between specified points in Maryland and Delaware.

Paragraph 6 alleges that "it was further part of the conspiracy that defendants would cause interstate travel for the purpose of receiving and distributing monies that were the proceeds of said bets and wagers between" specified points in Maryland and Delaware.

Paragraph 7 of the indictment alleges a number of specific overt acts which are claimed to have been done in furtherance of the conspiracy. While four of these specific acts are not expressly alleged to have been done by any of the named defendants, it is alleged that on or about November 21, 1968, defendants Manetti and Turner traveled from a specified point in Delaware to a specified point in Maryland and that on or about December 24, 1968, defendant Manetti traveled between specified points in Delaware. The indictment then concludes with the words "all in violation of Title 18, United States Code, Section 371".

The general principles governing this segment of defendants' challenge to the indictment were recently summarized by Judge Latchum in United States v. Borland, 309 F.Supp. 280, 286 (D.Del.1970):

> "The general test for the sufficiency of an indictment is whether it contains the elements of the offense intended to be charged, whether it sufficiently apprises the defendant of the charges which he must be prepared to meet

---

1. Section 1084, *inter alia*, provides that "whoever being engaged in the business of betting or wagering knowingly uses a wire communications facility for the transmission in interstate * * * commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers" shall be guilty of a crime.
Section 1952 provides, *inter alia*, that "whoever travels in interstate * * * commerce or uses any facility in interstate * * * commerce * * * with intent to (1) distribute the proceeds of any unlawful activity; or * * * (3) otherwise promote, manage, establish, carry on or facilitate the promotion, management, establishment or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the said acts", shall be guilty of a crime. "Unlawful activity" is defined to mean, *inter alia*, "any business enterprise involving gambling * * * in violation of the laws of the state in which they are committed or of the United States."

and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a formal acquittal or conviction. When the indictment charges a conspiracy to commit offenses against the United States, however, it is well established that 'it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy * * * or to state such object with the detail which would be required in an indictment for committing a substantive offense * * *. In charging such a conspiracy "certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary."' * * * *"

The government claims to have met these standards. It relies in particular, upon the subsidiary rule that an indictment which tracks the language of the statutes involved is ordinarily sufficient.[2]

Defendants, while acknowledging these general rules, point out that where the statutory definition of an offense includes generic terms, the indictment "must descend to particulars"[3] and any general description of the offense "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."[4] Defendants also rely upon the rule that where a statute states several offenses in disjunctive, the indictment must inform the defendant of the specific violation or violations with which he is charged.[5]

The indictment, fairly read, charges one crime, a violation of Section 371 of Title 18 of the United States Code. That section makes it a crime for two or more persons to conspire to commit an offense against the United States if one or more of such persons do any act to effect the object of the conspiracy. The elements of the crime prohibited are, accordingly, an agreement, an object unlawful under the laws of the United States, and an overt act.[6]

Of these elements, there can be no material dispute here as to the sufficiency of the allegations of the first and third. Paragraph 1 alleges an agreement between the defendants during a specified period of time. While the time period stated is of substantial duration, this does not, either by itself or in conjunction with any other factor present in this case, impair the validity of the indictment.[7] Paragraph 7 adequately alleges specific overt acts which a member or members of the alleged conspiracy are claimed to have committed in furtherance of the conspiracy. Since an allegation of one overt act is sufficient, the fact that some of the alleged overt acts are not expressly identified as acts of any conspirator, does not impair the validity of the indictment.[8]

Defendants' contention with respect to the insufficiency of the allegations of an unlawful object, on the other hand, is a more debatable one. In my judgment, that contention would have to be sustained, under the law of the cases cited by defendant, if the charging por-

2. E. g., Spinelli v. United States, 382 F.2d 871 (8 Cir. 1967), reversed on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

3. United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588 (1875).

4. Russell v. United States, 369 U.S. 749, 765, 82 S.Ct. 1038, 1048, 8 L.Ed.2d 240 (1962).

5. E. g., United States v. Wells, 180 F. Supp. 707 (D.Del.1959).

6. United States v. Borland, 309 F.Supp. 280 (D.Del.1970).

7. See, e. g., Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

8. DeLacey v. United States, 249 F. 625 (9 Cir. 1918).

tion of the indictment contained nothing more than the first paragraph.[9] The indictment goes on, however, in paragraphs 2 through 7 to acquaint defendant with the specific kind of activity they allegedly conspired to perpetrate. In substance, the charging portion of the indictment, read as a whole, alleges that defendants were engaged in the business of numbers writing and that, during the period from December 1, 1965 to January 16, 1969, they conspired:

(1) to receive numbers bets in Delaware and Maryland,

(2) for some of their number to travel in interstate commerce with the intent of establishing, promoting, managing, carrying on, and facilitating their numbers business in Delaware,

(3) to use telephone facilities for transmission between specified points in Maryland and Delaware of bets, gambling information, and information which entitled betters to receive money or credit as a result of bets, and

(4) to cause interstate travel for the purpose of receiving and distributing monies that were the proceeds of the aforementioned numbers bets.[10]

Thus, while it is true the statutory provisions which defendants are alleged to have conspired to violate speak to some extent in generic terms and do refer to a number of different offenses in the disjunctive, the charging portion of the indictment, when fairly read, seems to me to adequately apprise defendants of the conduct they are alleged to have conspired to perpetrate and of the specific segments of the statutes which it was allegedly the object of the conspiracy to violate. With one minor exception,[11] no part of the indictment itself is stated in disjunctive, and, accordingly, the fact that the activities which defendants allegedly conspired to conduct would have been a violation of more than one statute, or of more than one offense stated in a single statutory section, does not impair the validity of the indictment.[12]

With respect to defendants' concern about being able to plead this proceeding as a bar to a future one, the conclusion of the court in Turf Center, Inc. v. United States, 325 F.2d 793, 796–797 (9 Cir. 1964) is equally applicable here:

"Where a crime, denounced disjunctively in the statute, is charged in the conjunctive, the proof of any one of the allegations will sustain a conviction. Arellanes v. United States, 302 F.2d 603, 609 (9th Cir. 1962), cert. den. 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed. 2d 238. Thus, it is recognized that charging in one count the doing of the prohibited act in each of the prohibited modes redounds to the benefit of the accused. A judgment on a verdict of guilty upon that count will be a bar to any further prosecution in respect to any embraced by it. Crain v. United States, 162 U.S. 625, 636, 16 S.Ct. 952, 955, 40 L.Ed. 1097 (1896). See also, Korholz v. United States, 269 F.2d 897, 900 (10th Cir. 1959), cert. den. 361 U.S. 929, 80 S.Ct. 367, 4 L.Ed.2d 352

9. *E. g.*, United States v. Knox Coal Company, 347 F.2d 33 (3 Cir. 1965); United States v. Borland, 309 F.Supp. 280 (D.Del.1970).

10. The indictment thus informs defendants of the type of gambling activity they allegedly conspired to promote, and United States v. Chase, 372 F.2d 453, 461 (4 Cir. 1967), upon which defendants rely, is distinguishable on that ground.

11. Paragraph 3 of the indictment alleges that the telephone communications, among other things, transmitted information which entitled betters and wagerers to re-

ceive "money or credit". I construe this to mean that the transmitted information in some instances entitled a better to money and in other instances entitled the better to credit. In any event, I do not think the use of the disjunctive in this one instance is fatal since the indictment as a whole advises of the nature of the charge in sufficient detail to permit adequate preparation and to provide adequate protection in the event of a subsequent prosecution. United States v. Mayo, 230 F.Supp. 85 (S.D.N.Y.1964).

12. United States v. De Sapio, 299 F.Supp. 436 (S.D.N.Y.1969).

(1960); and Rule 7(c), Federal Rules of Criminal Procedure."[13]

▪ Defendants also make a subsidiary argument that paragraphs 2 through 6 appear, in a number of instances, to allege completed substantive violations of Sections 1084 and 1952, rather than merely stating that defendants conspired to commit acts which would violate those sections. All of these allegations are expressly tied to the allegation of a conspiracy, however, and a conspiracy to commit a substantive criminal offense is no less a conspiracy if its members have succeeded in committing that offense than it is if they do not accomplish their goal.[14] The indictment makes it clear that what is being charged here by the government is a conspiracy in violation of Section 371 of Title 18 of the United States Code and not substantive violations of Sections 1084 and 1952 of that title. It is sufficiently specific, in my judgment, to satisfy the standards announced in United States v. Knox Coal Company, 347 F.2d 33 (3 Cir. 1965) and United States v. Borland, 309 F.2d 280 (D.Del.1970).[15]

Defendants' motion to dismiss the indictment for lack of specificity, accordingly, will be denied.

## II. DISMISSAL OF THE PRIOR INDICTMENT AS A BAR.

▪ On August 12, 1969, defendants Manetti, Pritchard, Saunders and Turner were indicted in Criminal Action No. 1984. That indictment charged some of these defendants with three violations of Section 1952 of Title 18 of the United States Code and charged all of these defendants with conspiring to violate Sections 1084 and 1952 of that title. With the exception of the alleged period of the conspiracy, September 1, 1958 to January 16, 1959, and the absence of Burke as a co-conspirator, the wording of the conspiracy count is substantially the same as that contained in the indictment currently before me. The defendants in the prior action were arraigned on August 22, 1969. On September 29, 1969, defendants Manetti, Pritchard and Turner filed motions to quash certain search warrants and to suppress evidence obtained as a result thereof. These motions were briefed and a hearing was

13. Defendants also rely upon the prohibition against disjunctive pleading in connection with the reference in the indictment to a number of sections of the Delaware Code. These references are in the indictment because Section 1952 defines "unlawful activity" as activity which violates state law. Defendant claims these references make the indictment confusing because the sections of the Delaware Code referred to (11 Del.C. §§ 661, 662, 665 and 670a) spell out multiple offenses. The difficulty with defendants' argument is that the indictment does not refer to these sections in the disjunctive, but rather alleges that the conduct specified, namely the carrying on of "a business enterprise involving gambling in the form of numbers writing, otherwise known as lottery policy writing", violated each of these sections.

14. Reno v. United States, 317 F.2d 499 (5 Cir. 1963).

15. Defendants' motions, in addition to their attack upon the specificity of the indictment, assert that it does not allege a crime. This point is not explicitly developed in the briefs and I am not certain of the import of the argument unless it refers to the fact that the indictment, insofar as it purports to allege a conspiracy to violate Section 1952, alleges only that defendants conspired to travel in interstate commerce for the purpose of promoting their numbers business and does not specifically allege that they also conspired to thereafter do acts in Delaware to promote that business. While this deficiency might be fatal under the law of some other circuits, e. g., Nelson v. United States, 406 F.2d 1136 (10 Cir. 1969), it is firmly established in this circuit that where "the purpose of the conspiracy is the performing of acts which are made an offense by another section of the Criminal Code, every element of that offense need not be set forth." United States v. Knox Coal Company, *supra*. In view of the *Knox* case, I can only conclude that United States v. Eisenminger, 16 F.2d 816 (D.Del.1926) no longer represents the law of this circuit.

held on February 5, 1970. The search warrants in question had been issued prior to the decision of the Supreme Court of the United States in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (Jan. 27, 1969). Judge Latchum, in his opinion of February 24, 1970, found that the affidavits supporting the search warrants were insufficient under the test specified in that case.

On March 24, 1970, the government filed a notice of appeal from Judge Latchum's order suppressing the evidence seized under the search warrants. On May 1, 1970, this appeal was dismissed by stipulation of the parties pursuant to Rule 42(a) of the Rules of Appellate Procedure. On June 16, 1970, the grand jury returned the indictment in this case and, on the same day, the United States Attorney moved to dismiss the indictment in Criminal Action No. 1984 pursuant to Rule 48(a) of the Rules of Criminal Procedure. A copy of this motion was served by mail on defendants' attorney. On July 16, 1970, the Court entered an order granting the government's motion to dismiss the indictment in Criminal Action No. 1984. The record does not affirmatively demonstrate that defendants' counsel was notified of the time and date upon which this motion would be presented to the Court.

Rule 48(a) provides as follows:

"The Attorney General or the United States Attorney may by leave of Court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

Defendant contends (1) that when an indictment is dismissed pursuant to Rule 48(a) the direction that "the prosecution shall thereupon terminate" prohibits any reindictment on the same charge and (2) that under the circumstances of

this case it would be inequitable and perhaps unconstitutional for the government to be allowed to proceed on a new indictment after having secured a dismissal of the prior one.

The defendants' first argument was made and rejected in United States v. Chase, 372 F.2d 453, 463–464 (4 Cir. 1967) where the court concluded as follows:

"* * * It is true that Rule 48(a) states that a United States Attorney may, by leave of court, file a dismissal of an indictment 'and the prosecution shall thereupon terminate, 'but the authorities are replete that such a dismissal is without prejudice. Mann v. United States, 113 U.S.App.D.C. 27, 304 F.2d 394, cert. den. 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962); United States v. Becker, 221 F.Supp. 950 (W.D.Mo.1963); United States v. Shanahan, 168 F.Supp. 225 (S.D.Ind. 1959); United States v. Bowles, 183 F.Supp. 237 (D.Me.1958); United States v. Garces Dorrego, 17 F.R.D. 340 (D.Puerto Rico 1955). According to the rule, it is only when a trial has begun and jeopardy has attached that a dismissal may not be filed without a defendant's consent. * * * *"

I agree with this conclusion. It is precisely because a dismissal under Rule 48(a) does not bar a subsequent prosecution that the rule requires the consent of the court. Prior to the adoption of this rule, leave of the court was not required and this prerequisite to dismissal was added to enable the court to prevent "harassment of a defendant by charging, dismissing and recharging without placing a defendant in jeopardy".[16]

■ Defendants' second argument is grounded upon the assertion that, having gone to the expense and having endured the mental anguish of defending the first prosecution, they should not be required to defend another. It seems to me, however, that if defendants were

16. United States v. Cox, 342 F.2d 167, 171 (5 Cir. 1965). See also Woodring v.

United States, 311 F.2d 417 (8 Cir. 1963).

concerned about losing their monetary and emotional investment in the first proceeding, they should have objected to the dismissal of the indictment in that case and should have insisted that it go forward. Instead, they waited until the first indictment was dismissed without objection and then proceeded to attack the second indictment. Since it is at least arguable that defendants did not have a full opportunity to register any objection prior to the dismissal of the first indictment, however, I do not rest my decision on that ground.

The problems with defendants' second contention on its merits are (1) that the government's action in that case clearly does not rise to the level of harassment and (2) that defendants have not been substantially prejudiced by the dismissal of the original indictment. The government commenced the first prosecution with evidence which was subsequently suppressed. That evidence had been presented to the grand jury in the first proceeding. After this Court determined that this evidence had been obtained in violation of defendants' constitutional rights, the government, while convinced that it was not legally required to do so, decided that the safest and fairest course would be to place before the grand jury the remaining evidence which it then had in order to determine if that evidence alone would be be found to constitute probable cause for prosecution.[17] At the same time, the government's application to the grand jury eliminated the counts of the previous indictment charging violations of Section 1952 and alleged a conspiracy in a somewhat different form. When a new indictment was secured upon "untainted" evidence, dismissal of the previous indictment was sought.

I believe the above-recited facts are sufficient to demonstrate that there has been no intent to harass the defendants. Moreover, it does not seem to me that they have lost the fruits of their prior efforts. The proceedings in the first case consisted almost entirely of the proceedings on defendants' motion to quash the search warrants and suppress the evidence obtained thereby. Defendants were successful and the evidence has been suppressed. It will not be available for use by the government at the trial on the new indictment.

The issue here presented is unlike that considered by the Supreme Court in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In that case a North Carolina trial court, over the objection of the defendant, had given the prosecution permission "to take a *nolle prosequi* with leave". The effect of this procedure was not to terminate the proceedings on the indictment. The case could have been restored to the trial docket at the prosecution's discretion and the effect, accordingly, was a continuance of the case for an indefinite period during which the defendant could neither obtain a dismissal nor have the case brought on for trial. Since the indictment was not discharged, the statute of limitations remained tolled. The indictment in the *Klopfer* case had been returned on February 24, 1964 and the court's permission to take a *nolle prosequi* with leave was given on August 9, 1965. In the eighteen month interim period, defendant had actively sought a final disposition of the case. The Supreme Court held that under these circumstances the entry of the *nolle prosequi* deprived defendant of his right to a speedy trial under the Fourteenth Amendment to the United States Constitution.

The instant situation is distinguishable not only because the effect of a dismissal under Rule 48(a) is different from that of the procedure followed in the *Klopfer* case, but also because there can be no persuasive claim here that defendants have been denied a speedy trial.

---

17. An unrebutted affidavit of the United States Attorney states that none of the evidence obtained from the illegal search was presented to the grand jury in the second proceeding.

As previously indicated, the proceedings on the first indictment were those initiated by defendants' motion to suppress evidence. When the first indictment was dismissed, the second had already been returned by the grand jury and there is no reason to believe that the trial on the second indictment cannot be held as soon as the trial on the first indictment would have been held if it had not been dismissed. Here as before, the delay, to the extent there has been one, has been occasioned by pretrial motions of the defendants which have been pursued by the government with due diligence.

## III. THE EXPOSURE OF THE GRAND JURY TO "TAINTED" EVIDENCE.

At oral argument on the current motions, the prosecution referred to the fact that the jury panel which returned the second indictment was the same jury panel which had returned the first indictment after having considered the evidence thereafter suppressed. Defense counsel thereupon stated that they had not been aware of this fact and moved orally for a dismissal of the present indictment because of the grand jury's prior exposure to the "tainted" evidence.

■ Under Rule 12(b) of the Rules of Criminal Procedure, a pre-trial motion alleging "defects in the institution of the prosecution or in the indictment", shall include all such defenses and objections "then available to the defendant". Any not included, with certain exceptions not relevant here, are waived. The government relies upon this rule with respect to defendants' oral motions. Since the term of the grand jury is a matter of public record and the fact as to which "surprise" is claimed could have

been readily ascertained by counsel when their other motions were filed, I agree that defendants should be held to have waived this defense.

■ In addition, however, I believe this attack on the indictment is without merit. If defendants had affirmatively established that the grand jury had considered illegally seized evidence in its deliberations on the second indictment, this would not have required dismissal of that indictment since "one indictment returned by a legally constituted non-biased grand jury, * * *, if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment.[18] Dismissal is not appropriate, *a fortiori*, where the most that can be said is that the grand jury, in violation of its sworn duty, may have been influenced by illegally obtained evidence which was not then before it.

## IV. GRAND JURY RECORDS.

■ Under Rule 16(a) (3), a defendant is entitled to a copy of his own testimony before the grand jury unless the government affirmatively establishes some reason why it should be withheld.[19] No such reason has here been advanced. Each of the moving defendants will be provided with a transcript of any testimony given by him before the grand jury. In light of the purpose of Rule 16(a) (3), I see no legitimate distinction between testimony given during the proceedings on the indictment in Criminal Action No. 1984 and that given during the proceedings on the indictment in this case. The order will apply to both.

■ The request for the grand jury testimony of other witnesses, including co-conspirators, comes under Rule 6(e) and stands on a different foot-

18. Lawn v. United States, 355 U.S. 339. 349, 78 S.Ct. 311, 317, 2 L.Ed.2d 321 (1958). It is apparent from context of this statement in the *Lawn* case that the word "nonbiased" does not refer to a grand jury that may have been influ-

enced by exposure to illegal evidence. See also, United States v. Grosso, 358 F.2d 154 (3 Cir. 1966); United States v. Wolfson, 294 F.Supp. 267 (D.Del.1968).

19. *E. g.*, United States v. Projansky, 44 F.R.D. 550 (S.D.N.Y.1968).

ing.[20] Under that rule, matters occurring before a grand jury may be disclosed when permitted by the court "preliminarily to or in connection with a judicial proceeding or * * * at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment * * *." The defendant must show a "particularized need" for inspection, however, which outweighs the desirability of secrecy.[21]

The need alleged here is three fold. First, it is asserted that "there is a very present possibility" that the indictment is based on illegally obtained evidence since there were illegal searches and seizures at one stage of the investigation and since it appears from the indictment that wiretapping or telephonic surveillance "may" have played a "substantial part" in the prosecution's presentation. Second, it is maintained by defendant Burke that his testimony during the first grand jury proceeding was induced by a governmental promise of immunity and that his subsequent indictment may have been a product thereof. Finally, it is claimed that production is required in order to permit the defendants adequately "to prepare their defense and to prepare to examine witnesses whose recollection may have altered significantly at the time of trial, or whose interest may be adverse". None of these alleged needs, either single or in concert with the others, will justify a piercing of the veil of grand jury secrecy at this stage of the case.

Mere speculation by the defendants as to what may possibly have been submitted to the grand jury does not provide a basis for production of the transcript.[22] Moreover, the United States Attorney has filed an affidavit stating that no evidence obtained as a result of the earlier search and seizures was submitted to the grand jury and has assured defendants and the court on the record that there has been no wiretapping or electronic surveillance. Such a representation, standing unrebutted, *a fortiori*, calls for a denial of the motion so far as the first ground is concerned. Finally, as previously indicated, a defendant has no right to have an indictment dismissed merely because incompetent or illegally obtained evidence has been presented to the grand jury at least so long as some proper evidence was presented to support it.[23] Accordingly, an affirmative demonstration that illegal evidence was presented to the grand jury has been held to be an insufficient basis for a motion to inspect the grand jury records.[24]

With respect to defendant Burke's independent ground for inspection, the same considerations are applicable, except that the United States Attorney has not affirmed or denied that any evidence was presented in the second grand jury proceeding which was obtained as a result of Burke's prior grand jury testimony. But, defendant Burke has supplied no affirmative proof that tainted evidence was presented to the grand jury, much less any proof that tainted evidence was the sole basis for the indictment. His motion, accordingly, must be denied insofar as it rests upon any claim that his prior grand jury testimony was improperly induced.[25]

20. Dennis v. United States, 384 U.S. 855, 869, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); United States v. Tanner, 279 F. Supp. 457 (N.D.Ill.1967); Wright, Fed. Prac. & Pro. § 108 p. 180 (1969).

21. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959).

22. United States v. Wolfson, 294 F.Supp. 267 (D.Del.1968).

23. Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958);

United States v. Tane, 329 F.2d 848 (2 Cir. 1964).

24. Lawn v. United States, *supra*; United States v. Wolfson, 294 F.Supp. 267 (D. Del.1968).

25. Lawn v. United States, *supra*; United States v. Weber, 197 F.2d 237 (2 Cir. 1952). If Burke's initial grand jury testimony was in fact induced by a promise of immunity, that fact might provide a basis for a motion to suppress evidence or an objection to the admissibility of

In support of the third alleged need for inspection, defendants rely on Dennis v. United States, 384 U.S. 855, 86 S. Ct. 1840, 16 L.Ed.2d 973 (1966). While the *Dennis* case is distinguishable on several grounds, it will suffice for present purposes to point out that the request for grand jury testimony in that case came at trial and was limited to the transcript of the grand jury testimony given by four government witnesses who had theretofore testified. The court held that under the circumstances of that case the defendant had a particularized need for the material requested *in order to conduct cross-examination.* The case does not, however, authorize pre-trial inspection of the testimony of all witnesses before the grand jury, some or all of whom may never testify at trial. The need cited as the third ground for defendant's motion is not, in my judgment, a particularized need justifying production of grand jury transcripts. When the identity of the government's witnesses is revealed at the pre-trial conference or at trial, defendants may renew their motion if they so desire.[26]

## V. BILL OF PARTICULARS.

The role of the bill of particulars in modern criminal procedure is more difficult to discern and articulate than one would expect. In recognition of the fact that a decision in any given case inevitably involves an attempt to reconcile legitimate, but basically conflicting concerns, Rule 7(f) leaves the availability and permissible scope of a bill of particulars to the discretion of the trial judge without providing a yardstick for decision. A few guiding principles may be gleened from the cases, however.

Concern about facilitating perjured testimony and intimidation of witnesses, as well as the feeling that one immune from discovery should not have its benefits, thus far have prevented Rule 7(f) from becoming the equivalent of written interrogatories on the civil side of the calendar.[27] Thus, it is not the function of a bill of particulars to fully inform the defendant of the evidence which the government will present.[28] Of necessity, therefore, while one of its legitimate functions may be to reduce the role of surprise in criminal cases, it will not do to say that the rule must be applied to shield defendants from the possibility of confrontation with unanticipated evidence. Nor is the rule intended to give the defendant the benefit of the government's investigative efforts.[29]

On the other hand, the concern which gives rise to Rule 7(f) is that one accused of a crime should have an opportunity to prepare his defense.[30] Since one in this position must be presumed innocent, it must be assumed that he has

evidence at trial. Compare Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963). These steps are adequate protection, however, if Burke was in fact wrongfully induced to waive his right against self-incrimination. I do not understand defendant Burke to assert that this inducement was recorded as a part of the grand jury proceedings. If it had been so recorded, an application to inspect and copy this portion of the grand jury minutes in connection with a motion to suppress or an objection at trial would, of course, present a different issue than that presented by Burke's present motion.

26. United States v. Jaskiewicz, 272 F. Supp. 214 (E.D.Pa.1967); United States v. Marth, 42 F.R.D. 432 (S.D.N.Y.1967).

27. See Mr. Justice Brennan, "Remarks on Discovery", 33 F.R.D. 47, 56 (1963) for a summary of the traditional arguments against broad discovery in criminal cases and an articulate rebuttal thereof.

28. Peppard v. United States, 314 F.2d 623 (8 Cir. 1963); United States v. United States Gypsum Co., 37 F.Supp. 398, 402 (D.C.D.C.1941); United States v. Rosenberg, 10 F.R.D. 521, 523 (S.D.N.Y. 1950).

29. United States v. Universal Milk Bottle Service, 85 F.Supp. 622 (D.C.Ohio 1949).

30. United States v. Palmisano, 273 F. Supp. 750 (E.D.Pa.1967).

no knowledge of the facts other than those supplied to him by the government.[31] Accordingly, the bill of particulars is designed to fill any gap between the facts disclosed by the indictment and that "set of facts" which will permit him the opportunity of preparation. What constitutes this "set of facts" in a given case, however, is a somewhat elusive concept. Obviously, it is something other than the minimum which would apprise the defendant of the charges against him and, therefore, be sufficient to sustain an indictment. Otherwise, there would be no purpose for a bill of particulars.[32] On the other hand, it must be something less than all of the facts conscientious counsel would wish to have in preparing his case since this would call for disclosure comparable to civil discovery in disregard of the concerns underlying the authorities cited above.

In attempting to reconcile these conflicting concerns, it seems to me that the better reasoned opinions have reached the conclusion, though not always articulated in the same way, that a defendant is entitled to have the government inform him, either by way of indictment or bill, only of those central facts which will enable him to conduct his own investigation of the transactions giving rise to the charge. Thus, for example, a defendant is ordinarily entitled to the name of the participants in a conversation or transaction central to the charge,[33] but not to the names of all witnesses the government intends to call.[34] Likewise, he is entitled to be told the time and place of transactions giving rise to the charge,[35] but is not entitled to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the perimeters of its case in advance of trial.[36]

One further thing seems clear from the cases and the 1966 amendment to Rule 7(f). In the grey areas, the doubt must be resolved in favor of disclosure and the conflicting concerns must yield to paramount public interest in affording the accused a reasonable foundation for mounting a defense. Judge Whittaker, later Justice Whittaker, put it this way in an opinion commended by the Advisory Committee which recommended the 1966 amendment:

> " * * * Rule 7(f) necessarily presupposes an indictment or information good against a motion to quash or a demurrer. Its proper office 'is to furnish to the defendant *further information* respecting the charge stated in the indictment when necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial', and when necessary for those purposes, is to be granted even though it requires 'the furnishing of information which in other circumstances would not be required because evidentiary in nature', and an accused is entitled to this 'as of right'.
>
> * * * While they are not intended to advise a party of his adversary's evidence or theory, they will be re-

31. Fontana v. United States, 262 F. 283 (8 Cir. 1919); United States v. Smith, 16 F.R.D. 372 (W.D.Mo.1954).

32. United States v. Smith, *supra*. It is, of course, settled that a bill of particulars cannot make up for deficiencies in an indictment.

33. United States v. Palmisano, 273 F.Supp. 750 (E.D.Pa.1967); United States v. Tanner, 279 F.Supp. 457 (N.D.Ill.1967).

34. United States v. Lubomski, 277 F.Supp. 713 (E.D.Ill.1967).

35. United States v. Dean, 266 F.Supp. 159 (S.D.N.Y.1966); United States v. Giramonti, 26 F.R.D. 168 (D.C.Conn. 1960).

36. Spinelli v. United States, 382 F.2d 871 (8 Cir. 1967), reversed on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Nomura Trading Co., 213 F.Supp. 704 (S.D.N.Y. 1963).

quired, even if that is the effect, in cases where justice necessitates it. United States v. Balaban, D.C., 26 F.Supp. 491, 499." 16 F.R.D. 374–375.

It was in the same spirit that the 1966 amendment to Rule 7(f) was adopted eliminating the requirement that the defendant show "cause" before receiving a bill of particulars. This amendment was "designed to encourage a more liberal attitude towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." [37]

While the foregoing analysis does not dictate the proper disposition of the motion now before me with mathematical precision, it does point the way. The words of Judge Whittaker in United States v. Smith are again appropriate:

" * * * It seems quite clear that 'where charges of an indictment are so general that they do not sufficiently advise defendant of the specific acts with which he is charged, a bill of particulars should be ordered.' Cases cited and United States v. Grossman, D.C.N.Y., 55 F.2d 408; Chew v. United States, 8 Cir., 9 F.2d 348, 353.

* * * * * *

"Without definite specification of the time and place of commission of the overt acts complained of, and of the identity of the person or persons dealt with, there may well be difficulty in preparing to meet the general charges of the information, and some danger of surprise. I, therefore, believe that the defendant is entitled to some, but not all, of the information which his motion requests."

I reach a similar conclusion here.

Paragraphs 1 and 2 of the motion request "a precise statement of the specific manner in which such conspiracy was to violate" Sections 1952 and 1084. The third paragraph requests "a precise statement of the facts and the names of the witnesses upon which each element of * * * [the allegations of the indictment] rest". Paragraphs 4 through 6 ask, among other things, for "a precise statement as to how" the defendants were "involved in" or "would cause" the receiving of numbers bets, interstate communication and interstate travel. Paragraphs 7 and 8 request, among other things "a precise statement of the factual background of" certain alleged overt acts. Paragraph 11 asks for a list of all witnesses who have knowledge of the facts set forth in paragraphs 4 through 9 of the motion. These requests are too general and, if granted, would give the defendants more than they are due. A response would require the government either to spell out its whole case or run the risk of unduly limiting their presentation at trial.[38]

Paragraphs 9 and 10, in contrast, ask the names of the parties involved in, the date and time of, the subject matter of and numbers of the telephones involved in, the communications and telephone calls mentioned in the indictment. Defendants are entitled to this information to the extent the government has it.

While defendants are entitled to more information than has here been disclosed in the indictment, it seems to me that the motion in its present form should be denied. Permissible inquiry is inextricably interwoven with requests too great in breadth. I think it preferable that I not attempt to reconstruct or redraft the motion to fit my own conception of what is needed. Rather, defense counsel, who have the responsibility of preparing the defense, will be granted the opportunity to amend the motion in light of this opinion. I have some sympathy for the problems which defense counsel will confront in framing limited and specific questions where the

---

37. Advisory Committee Note, 39 F.R.D. 170 (1966).

38. Spinelli v. United States, 382 F.2d 871 (8 Cir. 1967), reversed on other grounds,

393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

indictment alleges a conspiracy of three years duration and is framed in terms as general as those here utilized. I believe, however, that more specific questions can be framed which will elicit such central facts as the approximate date and place of, and the participants in, the meetings or conversations which resulted in the alleged illegal agreement, as well as the dates and terminal points of, and the participants in, the interstate communications and travel referred to in the indictment.

By requiring more limited and specific questions of the defendants, I do not mean to indicate that the government, in responding, must put its stake down on precise times and places. It is, of course, possible that the government does not have specific information concerning such things as the times and places the alleged conspiracy was formed and intends to prove its formation by circumstantial evidence. The government should select some mode of response, however, which is reasonably calculated, under the circumstances of this case, to provide a foundation for an independent investigation by defendants. Inability to respond with exact times and places should not bar defendants from all discovery, nor should the government be held to a degree of specificity which will unduly hamper it in the proper prosecution of its case. The government's response should be in the spirit of the following observations of Justice Morris in United States v. United States Gypsum Co., 37 F.Supp. 398, 405 (D.C. 1941):

" * * * It must be borne in mind that many of the acts alleged in the indictment may be established, not by direct evidence, but by inference from numerous other facts and circumstances. Without knowledge of the material which the Government intends to make use of, it would be impossible for a court to determine the most practical means or indicia by which the Government should identify the acts as to which the defendants are entitled to further information.

Doubtless the time of the happening of some particular act must be arrived at only within a reasonable range, and that by inference. It is not necessary for the protection of a defendant that acts respecting which he is entitled to further information be identified in any particular manner. The important thing is that in some reasonable manner they be identified. I have, therefore, concluded that many of the requests for particulars should be denied, and that certain of them should be allowed, to the extent, however, that the Government shall be permitted reasonable latitude, so that rigid specificity will not defeat the furnishing of information to which the defendants are entitled, or unduly hamper the Government in its proper prosecution of the case. When the information directed is furnished its sufficiency, if questioned, can then be better determined."

Defense counsel may have ten days from the date of this opinion to reframe their requests.

## VI. SEVERANCE.

▬▬▬ Defendant Burke's motion for severance is based upon an affidavit of his attorney which states, in substance, that counsel has been informed by the attorney for the co-defendants that each of them has made oral statements tending to exculpate Burke from the charges contained in the indictment.

The court in United States v. Echeles, 352 F.2d 892 (7 Cir. 1965) has provided a concise statement of the general rule governing the disposition of motions to sever:

" * * * [T]he general rule has evolved that persons jointly indicted should be tried together, * * * particularly so where the indictment charges a conspiracy or a crime which may be proved against all the defendants by the same evidence and which results from the same or a similar series of acts. * * * Nevertheless, a single joint trial, however desirable

from the point of view of efficient and expeditious criminal adjudication, may not be had at the expense of a defendant's right to a fundamentally fair trial. * * * " 352 F.2d 896.

There are undoubtedly situations where a severance must be granted in order to give a defendant an opportunity to secure the testimony of a co-defendant to establish lack of involvement in a conspiracy. In the *Echeles* case, for example, the defendant, in a trial in which his alleged co-conspirator had not taken the stand, had been found guilty of a conspiracy to suborn perjury. The alleged co-conspirator had testified on three occasions in an earlier proceeding that the defendant was innocent of the charge. The court held that it was an abuse of discretion not to grant the defendant's motion for a severance.

The issue in each case, however, is whether a sufficient showing of prejudice has been made to require the expense and inconvenience of separate trials. A number of questions must be considered. For example, how certain is it at the time the application is made that the co-conspirator will not testify? How clear is it that exculpatory evidence in fact exists and how much probative value does it have?[39] Is there any substantial reason to believe that the alleged co-conspirator will be more willing to testify in a separate proceeding than in a joint trial?[40]

On the present record, the evidence of the existence and content of the alleged exculpatory evidence is extremely vague. Moreover, if some or all of the other co-defendants were to take the stand, defendant Burke's claim of prejudice would pale or vanish. For these reasons, I no not feel justified in directing at the present time that two trials be held. The court is under a continuing duty, however, to grant a severance whenever it appears that a defendant will be substantially prejudiced. Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). Defendant Burke may, accordingly, renew his motion at the pretrial conference when the trial strategy of his co-defendants will have been decided and when, perhaps, more specific information about the existence, character and importance of the alleged exculpatory evidence will be available.

## VII.   TRANSFER.

■ Defendant Burke's motion for a transfer under Rule 21(b) is based upon an affidavit of his court appointed attorney that he lives and practices in Wilmington Delaware, and that defendant Burke, an illiterate, resides in Elkton, Maryland, and has no telephone. It is argued that the lack of a telephone and the distance between Elkton and Wilmington make it difficult to adequately represent the defendant, and that it would be more convenient for him to be represented by Maryland counsel and tried in that state.

---

39. Compare the situation in the *Echeles* case with that in United States v. Tanner, 279 F.Supp. 457, 468 (N.D.Ill.1967) where the court concluded:
"* * * Something substantial must be offered to support a motion premised on Echeles. We cannot grant a severance on the bald assertion by defendants that someone has made or might make exonerative statements in their behalf."
*Cf.*, United States v. Kaufman, 291 F. Supp. 451 (S.D.N.Y.1968).

40. While the court in the *Echeles* case apparently rejected this as a considera-

tion, I believe it is a legitimate factor to be weighed. Compare United States v. Wolfson, 294 F.Supp. 267 (D.Del. 1968) and United States v. VanAllen, 28 F.R.D. 329, 338–339 (S.D.N.Y.1961) aff'd. sub nom. United States v. Kelly, 349 F.2d 720, 759 (2 Cir. 1965) with the present situation where it is highly unlikely that the government, having gone to trial on the second indictment, would decide. or would be permitted, to proceed against the alleged co-conspirators on a third indictment.

Elkton is approximately 19 miles from Wilmington. The possible trial sites in Maryland are Denton and Baltimore, each of which is as far or farther from Burke's home as Wilmington. While I regret that court appointed counsel is saddled with the problem cited by him, it seems to me that more cooperation from his client, rather than a transfer, would provide the more efficient solution. Public telephones are undoubtedly available to the defendant at a minimal cost. In any event, the problem does not seem to me to be of sufficient proportions to require two trials in two different districts, when one in Delaware will apparently suffice. Defendant's motion for transfer is denied.

## VIII. INSPECTION OF DOCUMENTS AND RECORDS.

■ Finally, defendants have moved to inspect "all physical things, records and documents" relating to, or obtained pursuant to, (a) searches and seizures of any of the defendants or any premises controlled by them, (b) surveillance or monitoring reproductions of any telephonic communications concerning any of the defendants and (c) records of the use of the telephone of defendant Burke. At oral argument, the government voluntarily agreed to comply with the third request and represented that there were no records, documents or tangible objects in the government's possession which come within the first and second requests. Defendant's motion is, accordingly, denied.

In short, each of the pending motions are denied, except that (1) each defendant shall be provided with a transcript of any testimony given by him during either of the proceedings of the grand jury and (2) counsel may submit a revised motion for a bill of particulars within ten days of the date of this opinion.

It is so ordered.